## LEWIS v. LIBBY, McNEILL & LIBBY.

### No. A–8701.

District Court, Alaska,
Third Division, Anchorage.

June 23, 1953.

Kay, Robison & Moody, Anchorage, Alaska, for plaintiff.

John E. Manders, Anchorage, Alaska, R. E. Robertson, Juneau, Alaska, Wendell Black, Seattle, Wash., for defendant.

FOLTA, District Judge.

The plaintiff seeks to enjoin the defendant from constructing and operating a salmon trap in such proximity to his trap as would not only preclude its operation but subject both traps to seizure and the parties to criminal prosecution for operating traps within the minimum lateral distance of 2500 feet fixed by law. Both parties desire a decision in a few days, so that the prevailing party may finish his trap and engage in fishing.

The plaintiff's trap and the partially constructed trap of the defendant are located on the eastern shore of Cook Inlet, Alaska. The defendant has maintained and operated a trap on the identical site for 25 years. It is an integral part of its cannery at Kenai, without which the operation of that enterprise would not be profitable. For the current fishing season, the plaintiff jumped the site.

■ There is no property right in a trap site. Its occupancy depends on priority. For years, however, the right of an occupant to reoccupy his chosen site has been so generally recognized that it has become a custom upon which several hundred owners of traps and stake nets rely. If the custom is disregarded or if those disposed to take advantage of the law, which recognizes priority only, resort to jumping sites, strife and violence will inevitably ensue.

In connection with the operation of its trap the defendant has maintained a cabin for its trap watchman and a tailhold for its trap on the abutting upland. In 1945 the plaintiff included this area comprising four acres in his homestead entry. The defendant's protest of June 24, 1946, against the inclusion of this area, was, on April 30, 1951, dismissed by the Bureau of Land Management. At the same time the defendant's application under the soldiers' additional homestead provisions of the law for this tract was rejected. On January 31, 1952, the defendant filed an adverse claim and in support thereof filed suit in this court on March 28, 1952, notwithstanding which, patent was issued to plaintiff on May 8, 1952.

During the entire period the parties carried on negotiations with a view to arriving at some agreement which would permit the defendant to continue its use of this part of the upland. In these negotiations, the defendant acted reasonably and in good faith. The plaintiff's actions were of like character, but after obtaining his patent he first demanded that the defendant purchase the area at from $750 to $1,000 an acre, and later that the defendant pay an annual rental of $5,000. On the trial the plaintiff admitted that the value of the land was not in excess of $200 an acre.

On April 4, 1953, long before such activities are ordinarily commenced and for the purpose of obtaining priority, the plaintiff commenced the construction of a hand trap, on the defendant's site. On April 22 the defendant notified plaintiff of its intention to reoccupy the site. On April 30 the plaintiff completed the trap structure, and all that remained to be done to put the trap into operating condition for the season which opens June 25 was the hanging of the netting and webbing, which, to avoid damage by exposure to tidal currents, storms, etc., is not ordinarily hung on such structures until just before the opening day of the season. On May 20, as in previous years, the defendant commenced driving piling at the seaward end for its trap. In driving piling from there shoreward the defendant's trap structure would cut through plaintiff's structure or its lateral supports and either partially destroy it or render it ineffective. The installation of a trap within 2500 feet laterally of another trap is prohibited by law.

There are approximately 375 hand and power driven traps and stake nets along the shores of Cook Inlet, each of which must be removed at the end of the fishing season to avoid destruction and loss of the material of which they are constructed, by ice floes. The water in the upper part of Cook Inlet is not only shallow but consists largely of fresh water from the large rivers

274

emptying into it, and hence freezes at higher temperatures. The tides, which are among the highest in the world, break up the ice into floes, and these, drifting up and down the inlet with the tides, preclude the maintenance of any structure for any distance offshore.

The defendant contends that:

1. It has acquired a prescriptive right to the site in controversy by seasonal use and occupation for the past 25 years and argues that the removal of a trap at the end of each fishing season to avoid destruction does not, in a legal sense, break the continuity of possession of the site which otherwise would be essential to the enforcement of the right.

2. By long established custom the occupant of a trap site is entitled to reoccupy it in each subsequent year as long as he reconstructs or installs the trap in time to place it into operation on the opening day of the fishing season.

3. The complaint does not state a claim for injunctive relief because (a) the averments as to irreparability and inadequacy are mere conclusions of law and in any event damages are ascertainable and the defendant is amply able to respond; (b) the maxim of clean hands is applicable because the plaintiff jumped defendant's site in violation of the custom referred to for the purpose of extortion, and with knowledge that the defendant had for many years occupied and would again occupy the site and after lulling the defendant into the belief that there would be no difficulty in agreeing upon a settlement of the questions arising as a result of the inclusion of the tract used and occupied by the defendant for its trap watchman and tailhold in the plaintiff's homestead.

4. By virtue of continuous occupancy of the upland area, the defendant has the littoral rights of an upland proprietor, which embrace the right to erect a fish trap over the abutting tidelands and submerged lands.

Most of these contentions, as well as those not mentioned, are devoid of merit. A costom may not prevail over an established rule of law and it is well es-

tablished that tidelands or submerged lands may be possessed only by actual use or occupancy, continuous in character, U. S. v. 10.95 Acres of Land, D.C., 75 F.Supp. 841, and that the first occupant has the superior right, Lind v. Markley, D.C., 105 F.Supp. 50; Fisher v. Everett, D.C., 66 F.Supp. 540, and cases there cited. Incidentally, this observation disposes of the contention that the defendant has acquired a prescriptive right in the site. Of course, it must be conceded that a judicial recognition of the custom referred to would be more conducive to peace and good order. Moreover, the enforcement of the rule that the prior occupant has the prior right does not finally settle the controversy. It becomes perennial, with ultimate victory in the grasp of the one with the superior financial ability.

The contention that the defendant's littoral rights, stemming from occupancy of the uplands at the shore end of the trap, includes the right to erect a fish trap upon the abutting tideland has been adversely disposed of in Columbia Canning Co. v. Hampton, 9 Cir., 161 F. 60.

Accordingly, I conclude that the plaintiff has established a superior right to the site for this year. But I am of the opinion that he is not entitled to injunctive relief. Evidence as to the number of salmon caught in the defendant's trap and their value is available for a sufficient number of years to furnish a fair criterion for the assessment of damages. Like evidence would be available at the close of the current season and the defendant's financial ability has been established. Hence I am of the opinion that irreparability has not been shown and that an adequate remedy at law exists. But the denial of injunctive relief is not rested on this premise alone but also on the doctrine of unclean hands. The only inference that may be drawn from the facts in evidence is that the plaintiff exhibited a generous disposition and willingness to settle the questions arising from the occupancy of the upland by the defendant for the maintenance of its tailhold and the use of the watchman's cabin, but that after his application for patent had been allowed his attitude changed and his

demands became unreasonable. He then demanded payment for the four acres involved at the rate of $750 to $1,000 an acre, and six weeks or so later, demanded an annual rental of $5,000. At the trial he testified that he installed his trap to compel the defendant to meet his latest demand. I am convinced that a court of equity should not lend its aid to one who "jumps a site" and then seeks to take undue advantage of one who has relied on his representations. The plaintiff is, therefore, remitted to his remedy at law.