**LOUIS T. GREAUX and AUGUSTINE JEAN QUETEL,**
**Plaintiffs**

**v.**

**HYPOLITE HATCHETTE and GUSTAVE QUETEL,**
**Defendants**

Civil No. 62 - 1958

District Court of the Virgin Islands

Div. of St. Thomas and St. John

June 27, 1958

*See, also, 164 F. Supp. 102*

FRANCISCO CORNEIRO, ESQ., Charlotte Amalie, Virgin Islands, *for plaintiffs*

MAAS & BAILEY, Charlotte Amalie, Virgin Islands, (WILLIAM W. BAILEY, ESQ., of counsel) *for defendant Hypolite Hatchette*

ALPHONSO A. CHRISTIAN, ESQ., Charlotte Amalie, Virgin Islands, *for defendant Gustave Quetel*

BIGGS, *Circuit Judge*

This litigation concerns fishing rights in a bay[1] at West Cay, a small island at the west end of the Island of St. Thomas in the Virgin Islands. All of West Cay is held by the defendant Hypolite Hatchette as a successor tenant under a lease executed by the Government of the Virgin Islands to his father. The defendant Gustave Quetel is a licensee or permittee of Hatchette and is authorized by him to use the land of the island in connection with fishing in its adjacent waters.

On the morning of April 3, 1958 the defendant Gustave Quetel and his fishing crew of three men left their homes in French Town in or near Charlotte Amalie and proceeded in their boat to West Cay Bay, arriving there at approximately 4:00 A.M. Immediately upon arrival they began preparing their seines for fishing and by 4:45 A.M. their preparations were complete.

About one hour later two boats owned by the plaintiffs, Louis E. Greaux and Augustine Jean Quetel, entered West Cay Bay. There were four other fishermen in the two boats. The two boats were drawn up on the beach, close to that of the defendant Gustave Quetel. There is evidence that some members of the plaintiffs' crew went on the beach above the high water mark. Upon their arrival at the beach the plaintiffs' crew began preparing their seines for fishing. During the course of or upon the completion of this preparation one of the plaintiffs, Louis Greaux, had Theodore Danet ask the defendant Gustave Quetel what "round"[2] Gustave Quetel wanted to "take" in West Cay Bay. Danet delivered a

[1] There are a number of bays at West Cay. For the purposes of this opinion we designate the bay which is the subject of this litigation as "West Cay Bay." It is that bay which faces Savana Passage, approximately opposite the north point of Kalkun Cay, the north side of which lies adjacent to the narrowest portion of West Cay.

[2] In fishing by seine, the seine is drawn around the school of fish. This is called taking a "round".

message to Greaux that Gustave Quetel had replied "one round". Gustave Quetel meant that it was impossible for Greaux to take a "round" in the bay because it was too small to permit more than one round to be taken at one time; therefore, since he, the defendant Quetel, had been first in the bay and ready to fish therein, established Virgin Islands custom authorized his right to seine to the exclusion of the plaintiffs Greaux and Augustine Quetel and their crew. The defendant Gustave Quetel also informed the plaintiff Louis T. Greaux that he Gustave Quetel, had authority to make use of the beach at West Cay Bay since he had been given permission to do so by the defendant Hypolite Hatchette. The boat of the defendant Gustave Quetel was put into the water.

The plaintiffs, in the light of the defendant Gustave Quetel's reply, apparently reached the conclusion and expressed it that if they were not allowed to fish in West Cay Bay that morning nobody would fish there. They put their boats alongside the defendant Gustave Quetel's boat so as to preclude him and his crew from seining. While the boats were in the positions designated, three[3] schools of fish approached the boats. Each time this happened both the defendant Gustave Quetel and his crew and the plaintiffs and their crew ran their boats' motors and threw rocks at the fish, scattering the schools. The defendant Gustave Quetel admitted with honesty that he was the first to throw rocks. He did this apparently because he realized that the plaintiffs intended to prevent his crew from seining fish.

The fish comprising the schools were identified as Carangidae, "carang", and though none of them was netted and the witnesses could describe only vaguely the sizes of the fish and the sizes of the schools, the defend-

[3]It is possible that the "three" schools were in fact one school which, being driven away, returned twice to the bay.

ant Gustave Quetel claims that the value of the schools was approximately $150.

The defendant Hypolite Hatchette was not present at West Cay on April 3, 1958, the day of the happening of the events complained of.

The plaintiffs seek, pursuant to Title V, Vol. I, V.I. Code, section 1261 et seq., a declaration of their right to fish in waters adjacent to West Cay and in particular in West Cay Bay, and a permanent injunction against interference by the defendants with their fishing.

The defendant Gustave Quetel has counterclaimed seeking damages in the amount of $150, the alleged value of the fish that got away.

The defendant Hypolite Hatchette seeks to enjoin the plaintiffs from trespassing on his land while fishing at West Cay.

The Court viewed the site and also had the advantage of a United States Coast and Geodetic Survey Map which, though of a small scale nonetheless is highly accurate.[4] The mouth of West Cay Bay is approximately 125 fathoms, 750 feet in width from one side of the usable seining area to the other. The usable width, however, would be decreased by the movements of seining boats approaching or leaving the shore line. There is expert testimony that the average seine employed by fishermen in the Virgin Islands is from 75 to 100 fathoms long.[5] There is some evidence that the seines which the two crews intended to employ in West Cay Bay on the morning in question were 60 fathoms each. As we have stated, the usable seining area in West Cay Bay is only 125 fathoms in width. Even if seines of only 60 fathoms in length were used it would be impracticable to take two rounds

[4] Plaintiffs' Exhibit 1, admitted by stipulation of the parties.

[5] Fred Richardson was called as an expert on seining by the defendant Hypolite Hatchette. We think he was qualified as an expert and therefore accept his testimony as expert testimony. Larkin v. May Department Stores, 250 F.2d 948 (3 Cir. 1958).

in the bay at one time. Accordingly, the Court finds as a fact that only one seine can be employed practicably at one time in West Cay Bay.[6]

■-■ While it is the general rule that all members of the public have a common and general right to fish in public waters and no private person can claim an exclusive right to fish in any portion of such waters, Grimes Packing Co. v. Hynes, 67 F. Supp. 43 (D.C. Alaska, 1946), aff'd 165 F.2d 323 (9 Cir. 1947), imposed upon this general right of piscary is the established Virgin Islands custom that the first fisherman who arrives at a fishing site is entitled to priority in the selection of a fishing area. Where, as in the case at bar, the seining area is so small that only one fishing crew can seine successfully in the area, the first crew on the site is entitled to seine to the exclusion of any other seining fisherman who arrives at the site at a later time. Accordingly the first fishing crew arriving at West Cay Bay is entitled to seine first in that bay and any other fisherman or fishing crew is compelled, as a matter of law, to await the termination of the prior seining before taking a round in the bay. In short: first in time, first in right. Cf. Fisher v. Everett, 66 F. Supp. 540 (D.C. Alaska, 1945); Lind v. Markley, 105 F. Supp. 50 (D.C. Alaska, 1952); Lewis v. Libby, McNeill & Libby, 113 F. Supp. 272 (D.C. Alaska, 1953). In the case at bar the defendant Gustave Quetel was first on the scene and therefore he and his crew had the right to take the round and the plaintiffs did not have that right.

■-■ It should be pointed out in this connection that while the defendant Hypolite Hatchette concededly is a valid lessee of West Cay and therefore the tenant of all

[6]In so finding, the Court is not unmindful of the sandy and rocky portions of West Cay Bay. The northern portion is sandy; the southern part, rocky. There is evidence that fishing by seine and by other methods is aided greatly by the techniques of skin-diving but even employing these advances in the science of fishing, the Court is still of the opinion that only one round at a time can be taken practicably in West Cay Bay.

land down to the high water mark, he in nowise is in control of the waters adjacent to the island. Grants by the sovereign of land abutting public waters are to be construed strictly against the lessee, and it will not be presumed that the sovereign intended to part with any portion of the public domain unless clear and special words are used to denote the grant. Martin v. Waddell's Lessee, 1842, 16 Pet. 367, 41 U.S. 367, 10 L. Ed. 997. The lease granted Hatchette, *vice* his father, by the Government of the Virgin Islands, contains no such broad grant. Therefore the defendant Hypolite Hatchette had no power to grant to the defendant Gustave Quetel, or to anyone else, any right to fish in the waters adjacent to West Cay. If the defendant Gustave Quetel desires priority to fish in West Cay Bay or in any other waters adjacent to the West Cay he will have to get to the fishing ground before any other fisherman.

The "petition" (complaint) in the case at bar alleges that the defendant Hypolite Hatchette on several occasions prior to April 3, 1958, declared to the plaintiffs that he had the exclusive right to fishing activities on and within the shores, beaches and off-shore areas of West Cay, and that he had threatened the plaintiffs with physical damage to their persons and property if they attempted to fish in such areas, and that he continues to claim the right to restrict fishing in the waters adjacent to West Cay to his licensees or permittees. We find no sufficient evidence in the record to support these allegations. In the light of all the circumstances, and in the absence of adequate proof as to the defendant Hypolite Hatchette's alleged declarations or assertions, the present motion to dismiss the complaint as to the defendant Hypolite Hatchette must be granted. We cannot find that he made such declarations or assertions. At best on this issue the court can only return the Scotch verdict of "not proven". It follows that the defendant Hypolite Hatchette should not be included in the

injunctive relief sought by the other parties against interference with their fishing. If Hatchette should hereafter make a declaration or assertion of the sort which the complaint alleges that he made the scope of the injunction issued concurrently with this opinion may be enlarged to include him specifically within its provisions.

■ ■ While the plaintiffs and all other persons have the right to fish in West Cay Bay and the other waters adjacent to West Cay they may not trespass upon the land of the defendant Hypolite Hatchette above the high water mark. There is evidence in the record, and the court finds as a fact, that some of the plaintiffs or members of their crew trespassed on the defendant Hypolite Hatchette's land above the high water mark. In view of the fact that the plaintiffs and other fishermen will continue to fish in the waters adjacent to West Cay, there is a threat of continued trespasses and a resultant multiplicity of suits. The court concludes therefore that the defendant Hypolite Hatchette's legal remedies are inadequate. Accordingly he will be awarded an injunction against any future trespasses by the plaintiffs or members of their crew. United States v. Colvard, 89 F.2d 312 (C.C.A. 4, 1937); Whelpley v. Grosvold, 249 Fed. 812 (C.C.A. 9, 1918); Pittsburgh, S. & W. R. Co. v. Fiske, 123 Fed. 760 (C.C.A. 3, 1903). The trespass, however, resulted in no substantial damage to the defendant Hypolite Hatchette. Accordingly he will be awarded nominal damages in the amount of six cents.

■ As to the defendant Gustave Quetel's counterclaim for damages, while the record demonstrates that he had the right to take the first round and was justified in his conclusion that the plaintiffs would interfere with his doing so, nonetheless he cast the first stone to drive the fish away. Had he permitted the plaintiffs to seine he would have been entitled to claim by way of damages the value of the fish which they had caught. Perhaps such a degree of for-

bearance on the part of the defendant Gustave Quetel could not be expected under the circumstances but the legal incidence of what he did remains the same. He was in a legal sense the proximate cause of his own loss. Under the circumstances we cannot award him damages.

 The dispute between the parties has engendered some heat and might lead to serious physical consequences. We have declared the rights of the parties but to the end that peace may descend upon the fishing waters of the Virgin Islands and in particular upon those adjacent to West Cay, it will be appropriate to mutually enjoin the parties, the defendant Hypolite Hatchette excluded, from interfering with one another's fishing, having in mind always the declared maxim: first in time, first in right. An injunction to such effect will issue concurrently with the filing of this opinion.

 The imposition of costs in this case has caused the court concern. The defendant Hypolite Hatchette aside, it is difficult to tell who has won and who has been cast in the litigation. The plaintiffs have achieved a declaration that they are entitled to fish in the waters adjacent to West Cay and in particular to West Cay Bay subject to the maxim: first in time, first in right. So, in effect has the defendant Gustave Quetel. It is clear, however, in the light of the declarations of rights contained in this opinion, that the plaintiffs erred in preventing the defendant Gustave Quetel from seining in West Cay Bay on the morning of April 3, 1958 for he was first upon the scene. The plaintiffs and their crew also cast stones and aided in driving away the arriving schools of carang. We have refused the defendant Gustave Quetel damages upon his counterclaim for the reasons stated. It is clear, however, that the defendant Hypolite Hatchette is entitled to his costs, both on the principal action and on his counterclaim, and that these costs should be taxed to the plaintiffs Louis T. Greaux and

Augustine Jean Quetel. The suit, however, is on the equity side and in the light of all the circumstances and the fact that no pertinent ruling has heretofore been made in the Virgin Islands on the rights of piscary, the court concludes, except as to the costs of the defendant Hypolite Hatchette, that all other costs should be aggregated and should be taxed in equal shares to the plaintiffs Louis T. Greaux and Augustine Jean Quetel on the one hand and to the defendant Gustave Quetel on the other: that is to say, the plaintiffs Louis T. Greaux and Augustine Jean Quetel shall pay one-half of such aggregated costs and the defendant Gustave Quetel shall pay one-half of such aggregated costs. It will be so ordered.

Findings of fact and conclusions of law are made in this opinion in compliance with the provisions of Rule 52(a), Fed. R. Civ. Proc., 28 U.S.C.