**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Gaylord FRIDLEY, Defendant and Appellant.**

**Cr. No. 904.**

Supreme Court of North Dakota.

June 24, 1983.

Ronald A. Reichert (argued), of Freed, Dynes, Reichert & Buresh, Dickinson, for defendant and appellant.

Owen K. Mehrer, State's Atty., and Tom M. Henning, Asst. State's Atty. (argued), Dickinson, for plaintiff and appellee.

PAULSON, Justice.

Gaylord Duane Fridley [Fridley] appeals from a judgment of conviction entered in the Stark County Court of Increased Jurisdiction on September 23, 1982, upon a jury's verdict finding him guilty of driving while his license was revoked. We affirm.

On the evening of April 1, 1982, Fridley was stopped for speeding in Dickinson by two auxiliary police officers of the Dickinson Police Department. A routine driver's license check revealed that Fridley's driver's license had been revoked. Fridley was subsequently arrested and cited for driving while his license was revoked, in violation of § 39–06–42 of the North Dakota Century Code.

Fridley demanded a jury trial. A jury was selected on August 3, 1982, and trial was scheduled to commence on September 13, 1982. On September 2, 1982, the State made a motion in limine requesting:

"that no reference be allowed in the trial of this case to contact by the Defendant, Gaylord Fridley, with the North Dakota Driver's License Division following the date of mailing by the hearing officer's office of the determination on the Defendant's appeal of his license revocation."

In its brief in support of the motion, the State said it anticipated a defense based on "confusion" on the part of the defendant. The State argued that trial testimony regarding contact by Fridley with the Drivers License Division of the North Dakota State Highway Department after he had been informed of his license revocation "would only be confusing to the jury and would serve no valid evidentiary purpose, as well as being objectionable under the North Dakota Rules of Evidence on grounds of relevance".

Fridley resisted the State's motion in limine on the grounds that his defense to the charge would rest upon the statutorily defined defense of excuse based upon mistake of law, pursuant to §§ 12.1–05–08 and 12.1–05–09, N.D.C.C., respectively. Fridley said his defense would be based on his mistaken assumption that he was legally authorized to drive at the time he was arrested.

The State's motion in limine was heard by the court on the same day as the trial. Fridley contended during his offer of proof that after he received notice of his license revocation, he contacted by telephone, in March of 1982, a person named "Debbie" of the Drivers License Division in regard to the procedures necessary for obtaining a work permit to drive. According to Fridley, "Debbie" told him that he must take a driver's test, that he must forward $10.00 along with his "SR–22 Form", and that he should send his driver's license with his application for a work permit to the Drivers License Division. Fridley stated that he was told he would then be without a driver's license for seven days. Fridley testified that he interpreted the substance of his conversation with "Debbie" to mean that his driver's license would be revoked for a period of seven days commencing only when these requested materials "hit the Bismarck office".

The record reflects that Fridley did not attempt to subpoena "Debbie" for the purpose of establishing his affirmative defense. Among the reasons given by Fridley's counsel for not subpoenaing "Debbie" as a witness were that they did not know her last name and that a telephone conversation he had had with personnel at the Drivers License Division left him with the impression that "Debbie" no longer worked there. Counsel for the State contended, however, that a person named "Debbie" from the Drivers License Division had called his of-

fice on the morning of trial to inform him that a State's witness from the Division would be late in arriving at Dickinson because of car trouble. Defense counsel said he intended to introduce "Debbie's" statements through the testimony of Fridley as an admission by a party-opponent, pursuant to Rule 801(d)(2) of the North Dakota Rules of Evidence.

In response to the State's motion *in limine*, Fridley also requested the following jury instruction based upon §§ 12.1-05-08 and 12.1-05-09, N.D.C.C.:

"Gaylord Fridley's conduct may be excused if he believe [*sic*] the facts were such that his conduct was necessary because of an official interpretation by the Drivers License Division. If you find that this belief is negligently or recklessly held, you may find that Gaylord Fridley was not justified in relying upon the interpretation by the personnel at the Drivers License Division. However, if you find that Gaylord Fridley, in good faith, relied upon the interpretation of the personnel at the Drivers License Division, and it is proved to your satisfaction by a preponderance of the evidence, then you should find Gaylord Fridley not guilty."

The court refused Fridley's requested jury instruction and granted the State's motion *in limine* prohibiting the defendant "from making any reference to contacts made through the Drivers License Division after the official written decision by the hearing officer" revoking his license. The court determined that any reference to statements made by "Debbie" at the Drivers License Division would constitute hearsay because there had been no showing by the defendant that the witness was unavailable, because the alleged statements were not an "admission against interest", and because the substance of the conversation did not fit within any exception to the hearsay rule. The trial court also determined that, under § 12.1-05-09, N.D.C.C., the statements purportedly made by "Deb-

bie" concerning the procedures for obtaining a work permit did not qualify as an "official interpretation" of the law defining driving while one's license is revoked. The court also concluded that there was no basis for granting the defendant's requested jury instruction because, as a matter of law, there had been no showing of "reasonable reliance" on an official statement or interpretation of the law. *See* § 12.1-05-09, N.D.C.C.

Fridley's request for a continuance for the purpose of subpoenaing "Debbie" as a witness was also denied by the court because, the trial judge stated, Fridley "had ample opportunity since the case first began to find Debbie and to have her here".

The jury found Fridley guilty of driving while his license was revoked on September 13, 1982. The court fined Fridley $400.00 and sentenced him to serve 30 days in jail, with 15 days suspended on the condition that he have no moving traffic violations for a period of one year. Fridley appeals.

In his appeal Fridley contends that the trial court erred in granting the State's motion *in limine*, thus precluding him from presenting evidence to establish his defense of excuse based upon mistake of law. We hold that the trial court properly granted the State's motion *in limine*—not on the basis of the reasons given by the trial court for its decision—but on the basis that, as a matter of law, the defense of excuse, based upon mistake of law, is not applicable to prosecutions under § 39-06-42, N.D.C.C., a strict liability offense for which proof of culpability is not required.[1]

We note at the outset that this is not a case in which the defendant received improper notice of intention to revoke his license and opportunity for a hearing. *See* *State v. Knittel*, 308 N.W.2d 379 (N.D.1981). Fridley availed himself of an administrative hearing on the issue of his license revocation. Defense counsel stated that he in-

---

1. Our court has held that a judgment will not be reversed merely because it rests upon inapplicable reasons. *See, e.g., Bohn v. Bohn Implement Co.*, 325 N.W.2d 281, 283 (N.D.1982); *KFGO Radio, Inc. v. Rothe*, 298 N.W.2d 505, 509 (N.D.1980); *McGuire v. Warden of State Farm, etc.*, 229 N.W.2d 211, 217 (N.D.1975).

formed Fridley of the hearing officer's decision revoking his license. Fridley's contention is that, although he initially knew that his driver's license was revoked, following his conversation with "Debbie" he believed he was legally authorized to drive until he had complied with "Debbie's" instructions pertaining to the procedure for obtaining a work permit.

Section 39–06–42(1), N.D.C.C., under which Fridley was convicted, provides in pertinent part as follows:

> "*39–06–42. Penalty for driving while license suspended or revoked—Impoundment of vehicle number plates—Authority of cities.*
>
> 1. Except as provided in chapters 39–16 and 39–16.1, and in section 39–06.1–11, any person who drives a motor vehicle on any public highway of this state at a time when his license or privilege so to do is suspended or revoked shall be guilty of a class B misdemeanor. . . ."

It is evident that § 39–06–42(1), N.D.C.C., does not contain a mental culpability requirement. Although § 12.1–02–02(2), N.D.C.C., provides that if a statute defining a crime does not specify any culpability requirement and does not provide explicitly that a person may be guilty without culpability, the culpability that is required is "willfully", past decisions of our court have restricted the application of § 12.1–02–02(2), N.D.C.C., to offenses defined in Title 12.1, N.D.C.C., alone. *See State v. Carpenter,* 301 N.W.2d 106, 110 (N.D.1980); *State v. North Dakota Ed. Ass'n,* 262 N.W.2d 731, 734 (N.D.1978); *City of Dickinson v. Mueller,* 261 N.W.2d 787, 789 (N.D.1977). In addition, we have previously pointed out that § 39–06–42, N.D.C.C., is one of several strict liability offenses found throughout our Century Code. *See State v. McDowell,* 312 N.W.2d 301, 305 (N.D.1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 318, 74 L.Ed.2d 294 (1982).

As noted earlier herein, Fridley's asserted defense was based upon §§ 12.1–05–08 and 12.1–05–09, N.D.C.C. Section 12.1–05–08, N.D.C.C., provides:

> "*12.1–05–08. Excuse.*—A person's conduct is excused if he believes that the facts are such that his conduct is necessary and appropriate for any of the purposes which would establish a justification or excuse under this chapter, even though his belief is mistaken. However, if his belief is negligently or recklessly held, it is not an excuse in a prosecution for an offense for which negligence or recklessness, as the case may be, suffices to establish culpability. Excuse under this section is a defense or affirmative defense according to which type of defense would be established had the facts been as the person believed them to be."

Section 12.1–05–09, N.D.C.C., provides:

> "*12.1–05–09. Mistake of law.*—Except as otherwise expressly provided, a person's good faith belief that conduct does not constitute a crime is an affirmative defense if he acted in reasonable reliance upon a statement of the law contained in:
>
> "1. A statute or other enactment.
>
> "2. A judicial decision, opinion, order, or judgment.
>
> "3. An administrative order or grant of permission.
>
> "4. An official interpretation of the public servant or body charged by law with responsibility for the interpretation, administration, or enforcement of the law defining the crime."

Chapter 12.1–05 of the North Dakota Century Code "is an almost complete adoption of Chapter 6 of the Proposed [Federal Criminal] Code dealing with defenses involving justification and excuse". *State v. Leidholm,* 334 N.W.2d 811, 814 (N.D. 1983). The language of § 12.1–05–09, N.D. C.C., is identical to § 609 of the Proposed Federal Criminal Code. *See* Final Report of the National Commission on Reform of Federal Criminal Laws § 609 (1971) [hereinafter Final Report]. It is therefore helpful, as an aid to interpreting the North Dakota mistake of law statute, to examine the Comments of the draftsmen of the Proposed Federal Criminal Code. *See, e.g., State v. Sadowski,* 329 N.W.2d 583, 585 (N.D.1983); *State v. Kaufman,* 310 N.W.2d

709, 712 (N.D.1981). *State v. Pfister,* 264 N.W.2d 694, 697 (N.D.1978); *State v. Bourbeau,* 250 N.W.2d 259, 264 (N.D.1977).

The Final Report, *supra* at page 53, contains, in relevant part, the following Comment regarding § 609:

"This section sets forth those circumstances under which a person is excused from criminal liability for his conduct because he mistakenly believed his conduct did not constitute a crime. *The defense is not available for infractions where proof of culpability is generally not required."* [Emphasis added.]

Although the above-quoted Comment indicates that the defense of mistake of law is not applicable to "infractions" where proof of culpability is not required, we believe the same holds true in regard to § 39–06–42, N.D.C.C., a class B misdemeanor for which proof of culpability is not required. In *State v. McDowell,* 312 N.W.2d 301 (N.D. 1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 318, 74 L.Ed.2d 294 (1982), our court concluded that it is proper for the legislature to enact laws making the violation thereof a matter of strict criminal liability, and, further, that it is consistent with the purposes of a regulatory statute to allow the imposition of a fine or incarceration for a violation of the statute without offending due process. It is evident that, in this regard, the draftsmen intended the applicability of the mistake of law defense to turn on the presence of a culpability requirement within the statute, rather than the probability of confinement.[2] *See* § 12.1–32–01(6) and (7), N.D.C.C.

In the instant case, allowing the assertion of the mistake of law defense, which rests upon a defendant's "good faith belief" that his conduct does not constitute a crime, is difficult to reconcile with the concept of a strict liability offense for which proof of a culpable state of mind is not required. Our conclusion that the mistake of law defense is not applicable to prosecutions under § 39–06–42, N.D.C.C., is in accord with this court's decision in *State v. Thorstad,* 261 N.W.2d 899 (N.D.), *cert. denied,* 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978). In *Thorstad, supra,* the defendant, who appealed from an order revoking his probation, contended in part that the evidence of the violation of the condition of probation was insufficient to sustain a revocation because the State did not establish by a preponderance of the evidence that the defendant intended to violate the condition of probation. The defendant had argued that his reliance on the advice of his attorney constituted legal justification for his failure to comply with the condition of probation. We stated, in *Thorstad, supra* 261 N.W.2d at 906:

"... case law and the authorities agree that a defendant may not successfully rely upon advice of his attorney as a defense for having violated a law. Only where the crime (violation) involved a criminal intent, depending on the circumstances, the legal advice a client received from his attorney may be given some consideration as to intent only, if the client in good faith relied upon it. But in the instant case no such intent is involved.

In *Thorstad, supra* 261 N.W.2d at 906 n. 2, we made no effort to construe § 12.1–05–09, N.D.C.C., "because it has no application to the issue under consideration".

Most other jurisdictions appear to have rejected attempts to establish similar defenses in prosecutions for strict liability traffic offenses. *See, e.g., State v. Ouellette,* 34 Conn.Supp. 649, 382 A.2d 1005, 1006 (1977); *Gray v. District of Columbia,*

**2.** We note that the Committee on Judiciary "B" of the North Dakota Legislative Council, which studied and analyzed Title 12.1, N.D.C.C., prior to its enactment, considered three alternative drafts for § 12.1–05–09, N.D.C.C. *See* Minutes of the Committee on Judiciary "B" of the Legislative Council, May 11–12, 1972, at page 5 [hereinafter Minutes]. Mr. Albert A. Wolf, a citizen member of such Committee, indicated during its discussions that the mistake of law defense should apply in situations where the offense charged is "malum prohibitum". *See* Minutes, *supra* at pages 3 and 4. The Committee, however, rejected the alternative draft supported by Mr. Wolf and adopted the version contained in the Proposed Federal Criminal Code. *See* Minutes, *supra* at page 5.

165 A.2d 481, 482 (D.C.1960); *City of Des Moines v. Davis,* 214 N.W.2d 199, 201–202 (Iowa 1974); *State v. Merrifield,* 180 Kan. 267, 303 P.2d 155, 157 (1956); *Commonwealth v. Koons,* 216 Pa.Super. 402, 268 A.2d 202, 203 (1970). *See generally* Annot., 61 A.L.R.3d 1041 (1975). *But see People v. Jones,* 100 Ill.App.3d 831, 55 Ill.Dec. 840, 843–844, 426 N.E.2d 1214, 1217–1218 (1981); *State v. Brown,* 107 Wis.2d 44, 318 N.W.2d 370, 374–377 (1982).

Because we hold that the mistake of law defense, as a matter of law, is not applicable to prosecutions under § 39–06–42, N.D. C.C., Fridley's conduct could not be "necessary and appropriate for any of the purposes which would establish a justification or excuse under ... [Chapter 12.1, *i.e.,* mistake of law under § 12.1–05–09, N.D.C.C.]". § 12.1–05–08, N.D.C.C. Therefore, excuse, as set forth in § 12.1–05–08, N.D.C.C., is equally inapplicable in the instant case.

For the reasons stated in this opinion, the judgment of conviction is affirmed.

ERICKSTAD, C.J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.