STATE of North Dakota, Plaintiff
and Appellee,

v.

Audrey E. NYGAARD, Defendant
and Appellant.

Cr. No. 880204.

Supreme Court of North Dakota.

Oct. 24, 1989.

Weiss, Wright & Paulson, Jamestown, for defendant and appellant; argued by Thomas E. Merrick.

Richard R. Tessier, Asst. Atty. Gen., Atty. General's Office, Bismarck, for plaintiff and appellee.

GIERKE, Justice.

This is an appeal by Audrey E. Nygaard (Nygaard) from a judgment of conviction finding her guilty of the offense of failure to notify the owner upon striking an unattended vehicle in violation of Section 39–08–07 of the North Dakota Century Code, a class A misdemeanor. We affirm.

At approximately 5 o'clock on the evening of December 30, 1986, Nygaard drove to Serb's Restaurant and Bar in Jamestown, North Dakota, to meet and discuss with the owner the possibility of getting a job. The vehicle Nygaard was driving was a 1974 brown and beige Plymouth Fury which was slightly damaged from an August 1986 accident.

The owner of Serb's Restaurant and Bar was not there when Nygaard arrived so she left and went to visit her sister for about a half hour. Nygaard then returned to Serb's Restaurant and Bar and the owner still was not available. While waiting for the owner, Nygaard sat with a couple of friends and had a few drinks. The owner of Serb's Restaurant and Bar finally arrived and Nygaard did meet and talk to him about employment. Then, according to Nygaard, at approximately 8:45 that evening, she left Serb's Restaurant and Bar in her vehicle and proceeded to drive to the Dakota Inn where she planned to meet a few friends.

While Nygaard was driving to the Dakota Inn on Fourth Avenue Southeast in

Jamestown, a small animal ran out onto the road in front of Nygaard's vehicle. In an attempt to avoid hitting the animal, Nygaard turned the steering wheel of her vehicle to the right and applied the brakes. After seeing that the animal was out of the way, Nygaard straightened the car out and stepped on the gas. At that time, she hit a patch of ice and the car swerved to the left. Nygaard thought she was going to hit two vehicles, a jeep and a van which were parked on opposite sides of the street. Nygaard hit the brakes and thought that she missed the jeep and stopped her vehicle six to ten inches away from the van. Nygaard then, without getting out of her vehicle to verify whether or not there was any contact with the jeep or the van, determined that she did not hit either of the two vehicles, backed her vehicle up and proceeded on to the Dakota Inn.

James Casavant was traveling behind the Nygaard vehicle and witnessed the entire incident. Mr. Casavant stated that "[t]he car started going to the right side of the road. And it drifted to the right side of the road. And then right before it ran into this red jeep-type vehicle it looked like it realized that it did some wandering and it tried to swerve away. And it hooked the back taillight of that vehicle." Mr. Casavant also stated that "[t]he car kind of bounced off of the red jeep and then it crossed over. And to me it looked like it hit the van on the other side. There was a sudden stop. I didn't hear any crash or anything. But I assumed that it hit." Mr. Casavant stated that no one got out of the vehicle after it hit these two cars. Instead, the vehicle backed up and proceeded on down the road. Mr. Casavant continued to follow the vehicle until it turned into the Dakota Inn parking lot. Mr. Casavant memorized the license plate number and went into Dean's Family Restaurant and wrote down the license number. While Mr. Casavant was dialing the number to the police station, two police officers, Officer Finck and Officer Warren, entered Dean's Family Restaurant. Mr. Casavant hung up the phone and went up to the officers to report that he had just witnessed a hit and run traffic accident. After explaining the incident to the police officers, Mr. Casavant gave them the license plate number and informed them that the vehicle had entered the Dakota Inn parking lot.

The officers radioed the incident to the police station. Another officer, Officer Caldwell, investigated the accident scene and verified that there were two vehicles, a red jeep and a blue van, out of position and that both vehicles had fresh damage to them. Officer Caldwell notified the owners of the jeep and the van, Ken and Wendy Schulz, that their vehicles had been involved in an accident. Officer Caldwell and the Schulzes went to look at the damage to the jeep and the van. Wendy reported that the damage sustained by the jeep was that "the whole taillight was ... ripped out ..., all of the rear parts that ... [were] covering ... [the taillight were] ripped out and the taillight was just kind of hanging there on the wire and that rear fender was completely bashed in" and "pieces from the taillight and the brake light were all over the street." Wendy also stated that the damage to the van was that there was a real nice dent on the side panel of the van. The estimated damage to the jeep was $1,132.48 and to the van was $775.83.[1] The Schulzes also explained to Officer Caldwell that nobody contacted them about the damage to the vehicles nor were there any notes left on the vehicles.

In the meantime, Officer Finck and Officer Warren proceeded to the Dakota Inn parking lot where they located the vehicle with the same license number and description provided by Mr. Casavant. The officers observed that there was no one in the vehicle and that there was a considerable amount of fresh damage to the front and the back right-hand side of the vehicle.

After determining that the vehicle was registered to Nygaard, the officers entered the Dakota Inn to locate her. The officers obtained Nygaard's description from the clerk at the front desk. The officers locat-

1. The actual repair bill for the jeep was $1,138.78 and the actual repair cost for the van was $395.60 resulting in $1,534.38 of total damage to the two vehicles.

ed Nygaard as she walked down a hallway of the Dakota Inn. The officers subsequently arrested Nygaard on the charge of driving while under the influence. A blood sample was taken and the test results came back with a blood alcohol content of .19% by weight.

The officers questioned Nygaard about her vehicle and whether it had been in an accident that evening. Nygaard stated that she had not been involved in an accident and that she was the only one who had driven the vehicle that evening. The officers then brought Nygaard outside to her vehicle and inquired as to how the damage occurred. Nygaard stated that she did not know how the damage occurred and that she did not remember being in an accident.

While examining Nygaard's vehicle, the officers observed that it had a smear of blue paint on the right front and a smear of red maroon paint on the back right-hand side. Officer Finck scraped off a sample of the red maroon paint smear from Nygaard's vehicle into an envelope and later determined that it matched the paint from the jeep. Officer Finck also determined in the course of preparing the accident investigation report that the damage to Nygaard's vehicle was consistent with the damage caused and inflicted to the two vehicles at the accident scene on Fourth Avenue.

On January 5, 1988, Nygaard was charged with failing to stop and notify an owner upon striking an unattended vehicle in violation of Section 39–08–07 of the North Dakota Century Code. A jury trial was held on June 17, 1988. Nygaard testified to the effect that she did not hit the two vehicles and if she did, she had no knowledge of that fact. At the close of the trial, counsel for Nygaard requested that an excuse instruction based on lack of knowledge be given to the jury.[2] The trial

court refused to give to the jury the requested instruction on excuse. The jury returned a guilty verdict and a judgment of conviction was entered.[3] Nygaard filed this appeal on June 27, 1988.

Nygaard contends on appeal that lack of knowledge is a valid affirmative defense to the offense of failure to stop and notify an owner upon striking an unattended vehicle. Accordingly, Nygaard contends that the trial court erred in refusing to give to the jury the requested instruction on excuse. Nygaard therefore contends that the conviction should be reversed and the matter remanded for a new trial.

In the instant case, Nygaard was charged and convicted of violating Section 39–08–07 of the North Dakota Century Code which provides as follows:

"39–08–07. Duty upon striking unattended vehicle—Penalty. The driver of any vehicle which collides with any vehicle which is unattended shall immediately stop and shall then and there either locate and notify the operator or owner of the vehicle of the name and address, as well as the name of the motor vehicle insurance policy carrier, of the driver and owner of the vehicle striking the unattended vehicle or shall leave in a conspicuous place in the vehicle struck a written notice giving the name and address, as well as the name of the motor vehicle insurance policy carrier, of the driver and of the owner of the vehicle doing the striking and a statement of the circumstances of the collision. Any person violating this section is guilty of a class A misdemeanor."

Initially, we note that in *State v. McDowell*, 312 N.W.2d 301 (N.D.1981), *cert. denied*, 459 U.S. 981, 103 S.Ct. 318, 74 L.Ed.2d 294 (1982), this Court determined that it was proper for the Legislature to enact laws making the violation thereof a

---

2. The excuse instruction as requested by Nygaard read:

"EXCUSE AS A DEFENSE

"A person's conduct is excused if he believes that the facts are such that his conduct is necessary and appropriate, even though his belief is mistaken."

3. Nygaard was fined $400.00 and sentenced to serve 30 days in jail with 26 days of the sentence suspended for a period of one year under certain conditions.

matter of strict criminal liability without a culpability requirement. This Court also determined that it is consistent with the purposes of a regulatory statute to allow the imposition of a penalty for a violation of the offense without offending due process. *State v. McDowell, supra.*

The United States Supreme Court, in *Morissette v. United States,* 342 U.S. 246, 255–256, 72 S.Ct. 240, 246, 96 L.Ed. 288, 296–297 (1952), observed as follows with regard to regulatory or public welfare offenses:

"These ... [public welfare offenses] do not fit neatly into any of such accepted classifications of common-law offenses, such as those against the state, the person, property, or public morals. Many of these offenses are not in the nature of positive aggressions or invasions, with which the common law so often dealt, but are in the nature of neglect where the law requires care, or inaction where it imposes a duty.... While such offenses do not threaten the security of the state in the manner of treason, they may be regarded as offenses against its authority, for their occurrence impairs the efficiency of controls deemed essential to the social order as presently constituted. In this respect, whatever the intent of the violator, the injury is the same, and the consequences are injurious or not according to fortuity. Hence, legislation applicable to such offenses, as a matter of policy, does not specify intent as a necessary element. The accused, if he does not will the violation, usually is in a position to prevent it with no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities. Also, penalties commonly are relatively small, and conviction does no grave damage to an offender's reputation. Under such considerations, courts have turned to construing statutes and regulations which make no mention of intent as dispensing with it and holding that the guilty act alone makes out the crime."

In *State v. Olson,* 356 N.W.2d 110, 112 (N.D.1984), this Court reviewed the legislative history of Section 39–08–07 of the North Dakota Century Code to determine the intent of the Legislature:

"Whether an offense is punishable without proof of intent, knowledge, willfulness, or negligence is a question of legislative intent to be determined by the language of the statute in connection with its manifest purpose and design. *State v. Rippley,* 319 N.W.2d 129 (N.D. 1982). Section 39–08–07 does not contain language requiring culpability. Our review of the legislative history behind Section 39–08–07 indicates that the Legislature enacted it without a culpability requirement. *See* 1955 N.D.Sess.Laws, Ch. 253, § 4. The legislative committee reports from 1953 to 1979 failed to make any mention of a culpability requirement. Section 39–08–07 has been substantively changed only twice since its enactment in 1955. In 1975, a penalty provision was added and in 1979 additional information was required to be given to the owner of the unattended vehicle. *See* 1975 N.D. Sess.Laws, Ch. 339, § 19; 1979 N.D.Sess. Laws, Ch. 421, § 2."

"Section 12.1–02–02(2), N.D.C.C., provides 'that if a statute defining a crime does not specify any culpability and does not provide explicitly that a person may be guilty without culpability, the culpability that is required is that one commit the offense willfully.' *State v. Bohl,* 317 N.W.2d 790, 793 (N.D.1982). That culpability requirement, however, applies only to the offenses or crimes described in Title 12.1, N.D.C.C., and therefore does not apply to Section 39–08–07, N.D.C.C. *City of Dickinson v. Mueller,* 261 N.W.2d 787 (N.D.1977). Because Section 39–08–07 includes no culpability requirement the violation is a strict-liability offense, punishable without regard to intent, knowledge, willfulness, or negligence. *State v. Bohl, supra; State v. Carpenter,* 301 N.W.2d 106 (N.D.1980); *State v. North Dakota Ed. Ass'n,* 262 N.W.2d 731 (N.D.1978). Strict liability statutes in criminal law do not invariably violate constitutional requirements. 'Thus, public welfare [statutes], i.e., reg-

ulatory measures enacted by the legislature under the exercise of the police power, which dispensed with mental culpability requirements, have generally been upheld if the accused is in a position to prevent the offense with no more care than society might reasonably expect and the penalty provided is small.' *State v. Carpenter, supra,* 301 N.W.2d at 111, citing *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952)."

Thus, this Court determined that Section 39–08–07 which includes no culpability requirement is a strict liability offense, punishable without regard to intent, knowledge, willfulness, or negligence. *State v. Olson, supra.*

However, this Court recognized in *State v. Olson, supra* at 113, a general rule of criminal law that "a person cannot be held criminally responsible for acts committed, or for failure to perform acts while he is unconscious." Accordingly, this Court stated in *State v. Olson, supra,* that "[a]lthough we agree that Section 39–08–07 is a strict-liability statute, one cannot be guilty of failing to conform to the statutory requirement where he or she is unconscious or lacks the mental or physical ability to perform the required act."

In the instant case, Nygaard does not argue that her failure to stop and give the statutorily required notice was because she was unconscious or lacked the mental or physical ability to perform the required act. Instead, as previously stated, Nygaard claims that an affirmative defense of excuse based on a mistaken belief that no collision occurred is applicable to prosecutions under Section 39–08–07, the strict liability offense of failing to stop after an accident and provide the required notice to the owner of the unattended vehicle.

Recently, in *State v. Michlitsch,* 438 N.W.2d 175 (N.D.1989), this Court acknowledged the availability of an affirmative defense instruction in a prosecution under Section 19–03.1–23 of the North Dakota Century Code for the strict liability offenses of possession of controlled substances and possession with intent to deliver for which the violation of is punishable as a felony. However, *State v. Michlitsch* is distinguishable from the instant case because in that case we recognized that with regard to a strict liability offense, an affirmative defense based on a total lack of knowledge of the circumstances is different from an affirmative defense based on a mistaken belief which might, under the appropriate factual situation, warrant an instruction on justification or excuse. Accordingly, we do not believe that *State v. Michlitsch* is controlling with regard to the issue in the instant case.

In *State v. Fridley,* 335 N.W.2d 785, 787 (N.D.1983), the defendant, in a prosecution under Section 39–06–42 of the North Dakota Century Code, a strict liability traffic offense which prohibits driving while your license is revoked, attempted to establish an excuse defense based upon a mistake of law. The trial court refused to give the requested jury instruction. *State v. Fridley, supra.* This Court determined that, as a matter of law, the mistake of law defense was not applicable to a strict liability traffic offense of driving while your license is revoked. *State v. Fridley, supra* at 790. This Court further determined that a defense of excuse, as set forth in Section 12.1–05–08 of the North Dakota Century Code, was equally inapplicable. *State v. Fridley, supra; see also City of Mandan v. Willman,* 439 N.W.2d 92, 94 (N.D.1989) (defense of excuse was inapplicable).

The excuse defense asserted by Nygaard was based upon Section 12.1–05–08 of the North Dakota Century Code which provides as follows:

"12.1–05–08. Excuse. A person's conduct is excused if he believes that the facts are such that his conduct is necessary and appropriate for any of the purposes which would establish a justification or excuse under this chapter, even though his belief is mistaken. However, if his belief is negligently or recklessly held, it is not an excuse in a prosecution for an offense for which negligence or recklessness, as the case may be, suffices to establish culpability. Excuse under this section is a defense or affirmative

defense according to which type of defense would be established had the facts been as the person believed them to be."

Thus, if the circumstances are such that a person's conduct is necessary and appropriate for any purpose which would establish a justification or excuse recognized in Chapter 12.1–05, then that person's conduct may be excused. Section 12.1–05–08, N.D. C.C.

In the instant case, Nygaard mistakenly believed that no collision occurred. In view of the circumstances of this case, we do not believe that Nygaard's conduct could be "necessary and appropriate for any of the purposes which would establish a justification or excuse under ... [Chapter 12.1–05, N.D.C.C.]". Section 12.1–05–08, N.D.C.C.; *State v. Fridley, supra.* Furthermore, under Section 12.1–05–08, if the "belief is negligently or recklessly held, it is not an excuse in a prosecution for an offense for which negligence or recklessness, as the case may be, suffices to establish culpability." Because, as stated in *State v. Olson, supra,* Section 39–08–07 is a strict liability offense, negligence or recklessness is more than sufficient to establish culpability. We believe, under the facts of the instant case, that Nygaard was at least negligent in not stopping to determine whether or not she had in fact struck another vehicle. Accordingly, we do not believe that the defense of excuse based on lack of knowledge is applicable to prosecution under Section 39–08–07 of the North Dakota Century Code. Therefore, we conclude the trial court's denial of Nygaard's requested instruction on excuse did not constitute error.

For the reasons stated in this opinion, the verdict of the jury and the judgment of conviction of the county court are affirmed.

ERICKSTAD, C.J., and VANDE WALLE, MESCHKE and LEVINE, JJ., concur.