**STATE of North Dakota, Plaintiff
and Appellee,**

v.

**Lynn Byron RASMUSSEN, Defendant
and Appellant.**

**Crim. No. 940113.**

Supreme Court of North Dakota.

Dec. 2, 1994.

William A. Mackenzie of Mackenzie, Jungroth, Mackenzie & Reisnour, Jamestown, for defendant and appellant.

Robert A. Freed, Asst. State's Atty., Jamestown, for plaintiff and appellee.

SANDSTROM, Justice.

The defendant was convicted of driving under suspension, after the trial court concluded justification or excuse was unavailable as a matter of law. Because we hold justification or excuse could apply, we reverse and remand for a new trial.

I

In the early morning hours of January 13, 1994, the elevator manager at Windsor reported an apparent break-in at the grain elevator. As the Stutsman County deputy sheriffs approached Windsor, they noticed a vehicle about a quarter mile off Interstate 94, near the edge of town. Fresh tracks led from the car, from house to house, and then into the elevator, but they did not exit. When the officers yelled into the elevator, Lynn Rasmussen answered and came out. Rasmussen said he had car trouble and sought shelter from the cold. The night was very cold and it had been snowing quite heavily. Because it appeared Rasmussen had only been seeking shelter, no offense was charged for the break-in.

A records check disclosed Rasmussen's driver's license was suspended. The car was registered to Rasmussen. He said another person had been driving the car back from Fargo to Bismarck when engine trouble developed. He said the driver had then started walking and had hitch-hiked. Rasmussen said he sat in the car until he decided he had to get help and find shelter from the cold. He said he managed to drive the car to the edge of Windsor, where it died. He then sought shelter.

Rasmussen was charged with driving while his license was under suspension, in violation of N.D.C.C. § 39–06–42, a class B misdemeanor. The case was tried to the court.

One of the deputies testified damage to the car seemed to reflect it had been driven into a ditch. Damage to the radiator, he said, probably caused the car to over-heat. The deputy said Rasmussen had not named the alleged driver.

Rasmussen testified, naming the alleged driver. He said he had bought the car while his license was under suspension. He said

he was trying to sell the car to the alleged driver so they took a test drive from Bismarck to Fargo, and had stopped to visit Rasmussen's nephews in Fargo. Rasmussen said they were driving back to Bismarck in very nasty weather when car trouble developed, and the driver had headed off on his own. The alleged driver did not testify. No other witnesses were called.

Rasmussen argued justification or excuse as a defense to driving under suspension. The trial court ruled justification or excuse was not permitted and found Rasmussen guilty. Rasmussen appeals from the judgment of conviction.

The trial court had jurisdiction under Art. VI, § 8, N.D. Const., and N.D.C.C. § 40–18–15.1. This Court has jurisdiction under Art. VI, § 6, N.D. Const., and N.D.C.C. § 29–28–06(2). The appeal was timely under Rule 4(b), N.D.R.App.P.

## II

### A

After the argument of counsel as to the availability of justification or excuse, the court ruled:

> "Well, I've gone through what I can find for justification and excuse—none of which specifically applies, that I can tell, to the situation we have before us. Therefore, while there may have been some reason for having done what he did, accepting his version of what took place, I don't think they're covered by the statute. And, so I determine that he's guilty of the offense of driving while under suspension."

We interpret the trial court's words as ruling justification or excuse was unavailable as a matter of law under the facts claimed by Rasmussen. N.D.R.Crim.P. Rule 23(d) provides: "In a case tried without a jury, the court shall make a general finding of guilty or not guilty." N.D.R.App.P. Rule 35(c) provides:

> "Upon an appeal from a verdict or judgment, the supreme court may review any

intermediate order or ruling which involves the merits or which may have affected the verdict or judgment adversely to the appellant."

Therefore, we review the trial court's ruling on the unavailability of justification or excuse.

### B

■ N.D.C.C. ch. 12.1–05 justifications and excuses may apply to offenses outside of Title 12.1. *See e.g., State v. Nehring*, 509 N.W.2d 42 (N.D.1993) (delivery of a controlled substance in violation of N.D.C.C. § 19–03.1–23(1)(b)); *State v. Mathisen*, 356 N.W.2d 129 (N.D.1984) (issuing checks without sufficient funds in violation of N.D.C.C. § 6–08–16); *State v. Patten*, 353 N.W.2d 30 (N.D.1984) (removing a child from the State contrary to a custody decree in violation of N.D.C.C. § 14–14–22.1). *Compare* N.D.C.C. § 12.1–02–02 ("For the purposes of this title....") relating to culpability; *State v. North Dakota Ed. Ass'n*, 262 N.W.2d 731, 734 (N.D.1978) ("Section 12.1–02–02, N.D.C.C., is a part of a recodified criminal code, and applies only to that code.").

### C

Chapter 12.1–05 of the North Dakota Century Code "is an almost complete adoption" of Chapter 6 of the Proposed Federal Criminal Code dealing with defenses of justification and excuse. *State v. Fridley*, 335 N.W.2d 785, 788 (N.D.1983); *State v. Leidholm*, 334 N.W.2d 811, 814 (N.D.1983). As an aid to interpreting the North Dakota statutes, therefore, it is helpful to examine the Comments of the drafters of the Proposed Federal Criminal Code. *See, e.g., Fridley; State v. Sadowski*, 329 N.W.2d 583, 585 (N.D. 1983); *State v. Kaufman*, 310 N.W.2d 709, 712 (N.D.1981).

> "All justifications and excuses are either defenses (the burden of disproof is on the prosecutor) or affirmative defenses (the burden of proof is on the defendant). See § 103(2) and (3) [N.D.C.C. § 12.1–01–03(2), and (3)].

"Since justifications and excuses have similar consequences, the principal reason for distinguishing between them is clarity of analysis. A justification is a circumstance which actually exists and which makes harmful conduct proper and noncriminal. An excuse is a circumstance for which the Code excuses the actor from criminal liability even though the actor was not 'justified' in doing what he did, *e.g.*, a nonculpable but mistaken belief that facts affording a justification exist."

Final Report of the National Commission on Reform of Federal Criminal Laws at 44 (1971) ("Final Report").

### D

The State argues affirmative defenses are unavailable because driving under suspension is a strict liability offense. In *City of Mandan v. Willman*, 439 N.W.2d 92, 93 (N.D. 1989), this Court said:

"We have recently recognized the availability of an affirmative defense to a strict liability offense. *See State v. Michlitsch*, 438 N.W.2d 175 (N.D.1989). However, we need not address the City's legal argument that there are no affirmative defenses to the strict liability offense of driving under revocation because if there are, we find the defenses inapplicable under the facts of this case. For a thorough analysis of the legal issue, *see State v. Brown*, 107 Wis.2d 44, 318 N.W.2d 370 (1982) [defense of legal justification is applicable to speeding violation]; *see also* Annot., 34 A.L.R.4th 1167 [applicability of the affirmative defense of entrapment to strict liability traffic offenses]."

While recognizing strict liability does not always preclude affirmative defenses, the case left open the question of the availability of affirmative defenses to the strict liability offense of driving under suspension or revocation. *Willman*. In *State v. Nygaard*, 447 N.W.2d 267, 271 (N.D.1989), this Court differentiated *Michlitsch* to hold the particular "affirmative defense of excuse based on a mistaken belief" is not available for "the strict liability offense of failing to stop after an accident." In *Brown*, 107 Wis.2d 44, 318 N.W.2d at 376, the Wisconsin Supreme Court discussed policy considerations in determining if particular defenses should be permitted for a particular strict liability offense:

"[W]hen determining whether we should recognize any defenses to a strict liability traffic offense, we must determine whether the public interest in efficient enforcement of the traffic law is outweighed by other public interests which are protected by the defenses claimed.

"There are several public interests protected by the defenses claimed. The privilege of self-defense rests upon the need to allow a person to protect himself or herself or another from real or perceived harm when there is no time to resort to the law for protection. The rationale of the defenses of coercion and necessity is that for reasons of social policy it is better to allow the defendant to violate the criminal law (a lesser evil) to avoid death or great bodily harm (a greater evil). Hall, *General Principles of Criminal Law* 425–26 (2d ed. 1960); La Fave & Scott, *Criminal Law* secs. 49, 50 (1972). The public policy for recognizing entrapment as a defense is not to avoid some other harm to the defendant but to deter reprehensible police conduct. 'The applicable principle is that courts must be closed to the trial of a crime instigated by the government's own agents.' *Sorrells v. United States*, 287 U.S. 435, 459, 53 S.Ct. 210, 219, 77 L.Ed. 413 (1932)."

We conclude public policy factors would support an affirmative defense to driving under suspension in life-threatening circumstances.

### E

■ The trial court incorrectly concluded the specific justification and excuse provisions of N.D.C.C. ch. 12.1–05 do not apply to the facts claimed by Rasmussen. N.D.C.C. § 12.1–05–10 provides:

"1. In a prosecution for any offense, it is an affirmative defense that the actor en-

gaged in the proscribed conduct because he was compelled to do so by threat of imminent death or serious bodily injury to himself or to another. In a prosecution for an offense which does not constitute a felony, it is an affirmative defense that the actor engaged in the proscribed conduct because he was compelled to do so by force or threat of force. Compulsion within the meaning to this section exists only if the force, threat, or circumstances are such as would render a person of reasonable firmness incapable of resisting the pressure. "2. The defense defined in this section is not available to a person who, by voluntarily entering into a criminal enterprise, or otherwise, willfully placed himself in a situation in which it was foreseeable that he would be subject to duress. The defense is also unavailable if he was negligent in placing himself in such a situation, whenever negligence suffices to establish culpability for the offense charged."

The Comments to the Proposed Federal Criminal Code § 618 reflect that the compulsion may be from any source. Final Report at 54. *See also* "A Hornbook to the North Dakota Criminal Code," 50 N.D. L.Rev. at 680 (1974).

An affirmative defense under N.D.C.C. § 12.1–05–10 is available for driving under suspension when the compulsion is from life-threatening forces of nature.[1]

### III

The judgment of the trial court is reversed and the case is remanded for a new trial.

VANDE WALLE, C.J., and NEUMANN, LEVINE and MESCHKE, JJ., concur.

---

1. While the headnote for N.D.C.C. § 12.1–05–10 is "Duress," and our interpretation of the statute may be broader than the usual meaning of duress, the headnote is not part of the statute and may not be used to determine legislative intent. N.D.C.C. § 1–02–12. Because the statute pro- vides a defense under the facts claimed, we need not reach the broader concept of a defense often referred to as "necessity" or "choice of evils." *See State v. Sahr*, 470 N.W.2d 185, 188–89 (N.D. 1991).