2011 ND 84

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Ryan ZOTTNICK, Defendant and Appellant.**

**No. 20100310.**

Supreme Court of North Dakota.

May 11, 2011.

Pamela Ann Nesvig, Assistant State's Attorney, Bismarck, N.D., for plaintiff and appellee; on brief.

Susan Schmidt, Bismarck, N.D., for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Ryan Zottnick appealed from a criminal judgment entered after a jury found him guilty of violating an order prohibiting contact with Katie Abt. Zottnick argues the district court erred in refusing to instruct the jury on excuse and there is insufficient evidence to support the conviction. We affirm.

I

[¶ 2] The State charged Zottnick with violating an order prohibiting contact under N.D.C.C. § 12.1–31.2–02, alleging he had direct contact with Abt from November 1 through 3, 2009, in violation of an October 19, 2009 order prohibiting that contact. The October 19, 2009 order prohibited Zottnick from any direct or indirect contact with Abt, including threatening, molesting, injuring, or harassing her, calling, writing, or visiting her anywhere, having messages delivered to her, or entering or coming within 100 yards of her or her residence. The order prohibiting contact explicitly specified in bold print that "[c]onsent of [Abt] does not invalidate this order," and on October 19, 2009, Zottnick signed an admission of service of the order.

[¶ 3] At trial, Abt testified that between November 1 and 3, 2009, Zottnick repeatedly telephoned her, emailed her, sent her text messages, and on November 2, 2009, he came to her parents' house while she was there and pounded on the door. The State introduced copies of text messages and e-mails sent to Abt from November 1 through 3, 2009, from telephone numbers for phones belonging to Zottnick and an audio recording of a phone message left on her phone. The State also introduced Zottnick's cellular telephone records for incoming and outgoing calls from October 19, 2009 through November 3, 2009, for two telephone numbers for phones belonging to him. Those records indicate Abt initiated six phone calls to Zottnick's phones from October 19 through October 31, 2009, and numerous calls were made from his phones to her phone during that time. Those records further reflect that two phone calls were made from Abt's phone to Zottnick's phones from November 1 through November 3, 2009, and numerous calls were made from his phones to her phone.

[¶ 4] At trial, Zottnick claimed Abt initiated contact with him and his conduct in replying to her was excused. Zottnick requested a jury instruction on excuse patterned after N.D.C.C. § 12.1–05–08 and N.D.J.I. Criminal K–3.80. The district court refused to give that instruction, ruling there was no "clear indication [in the record] of what the content of [Abt's] contact was, other than [defense counsel] asked her some questions about e-mails and she said she wasn't sure without looking at the e-mails. So I don't know that we have any of that as evidence. [Defense counsel's] questions aren't evidence. It's a matter of whatever Ms. Abt says. So I am not going to instruct on excuse." A jury thereafter found Zottnick guilty of violating the order prohibiting contact with Abt.

II

[¶ 5] Zottnick argues the district court erred in refusing to give his requested jury instruction on excuse based on N.D.C.C. § 12.1–05–08 and patterned after N.D.J.I. CRIMINAL K–3.80. The pattern jury instruction provides:

A person's conduct is excused if the person believes that the facts are such that the conduct is necessary and appropriate, even though that belief is mistaken. [However, if that belief is negligent-

ly or recklessly held, it is not an excuse in a prosecution for any offense for which negligent or reckless conduct suffices to establish culpability.]

Zottnick claims phone records established he was entitled to that instruction because Abt initiated contact with him to reestablish a prior relationship with him and he was excused in replying to her contacts with him.

[¶ 6] "We review jury instructions as a whole to determine whether they fairly and adequately advise the jury of the applicable law." *State v. Ness*, 2009 ND 182, ¶ 13, 774 N.W.2d 254. " 'A defendant is entitled to a jury instruction on a defense if there is evidence that creates a reasonable doubt about an element of the charged offense.' " *Id.* (quoting *State v. Zajac*, 2009 ND 119, ¶ 12, 767 N.W.2d 825). We view the evidence in the light most favorable to a defendant to decide if there is sufficient evidence to support a jury instruction. *Ness*, at ¶ 13. A court errs if it refuses to instruct the jury on an issue that has been adequately raised, but the court may refuse to give an instruction that is irrelevant or inapplicable. *Id.*

[¶ 7] Section 12.1–05–08, N.D.C.C., provides the basis in our criminal code for claiming the defense of excuse:

A person's conduct is excused if he believes that the facts are such that his conduct is necessary and appropriate for any of the purposes which would establish a justification or excuse under this chapter, even though his belief is mistaken. However, if his belief is negligently or recklessly held, it is not an excuse in a prosecution for an offense for which negligence or recklessness, as the case may be, suffices to establish culpability. Excuse under this section is a defense or affirmative defense according to which type of defense would be

established had the facts been as the person believed them to be.

That statute is part of N.D.C.C. ch. 12.1–05, which deals with defenses in the criminal code involving justification and excuse. *See State v. Leidholm*, 334 N.W.2d 811, 814–15 (N.D.1983) (discussing justification and excuse in context of self-defense); *see also* N.D.C.C. § 12.1–02–03 ("[u]nless otherwise expressly provided, a mistaken belief that the facts which constitute an affirmative defense exist is not a defense"). Criminal conduct that may be justified or excused under N.D.C.C. ch. 12.1–05, includes conduct in the execution of a public duty, self-defense, defense of others, use of force by persons with parental, custodial, or similar responsibilities, and use of force in defense of premises and property. *See* N.D.C.C. §§ 12.1–05–02 through 12.1–05–07.2. Chapter 12.1–05, N.D.C.C., also provides for affirmative defenses of mistake of law, duress, and entrapment. *See* N.D.C.C. §§ 12.1–05–09 through 12.1–05–11.

[¶ 8] Under N.D.C.C. ch. 12.1–05, conduct that constitutes a defense may be justified or excused. *See Leidholm*, 334 N.W.2d at 814. In *Leidholm*, at 814–15 (emphasis in original), we explained the distinction between justification and excuse:

A defense of justification is the product of society's determination that the *actual existence* of certain circumstances will operate to make proper and legal what otherwise would be criminal conduct. A defense of excuse, contrarily, does not make legal and proper conduct which ordinarily would result in criminal liability; instead, it openly recognizes the criminality of the conduct but excuses it because the actor believed that circumstances actually existed which would justify his conduct when in fact they did not. In short, had the facts

been as he supposed them to be, the actor's conduct would have been justified rather than excused.

[¶ 9] "A defendant may be entitled to an excuse jury instruction and his conduct may be excused if there is evidence that 'he believes that the facts are such that his conduct is necessary and appropriate for any of the purposes which would establish a justification or excuse under [N.D.C.C. ch. 12.1–05], even though his belief is mistaken.'" *Ness*, 2009 ND 182, ¶ 18, 774 N.W.2d 254 (quoting N.D.C.C. § 12.1–05–08). In *Ness*, at ¶ 18, the defendant claimed his failure to immediately tag a deer after it was killed was excused because "it was late in the deer hunting season, he had not had a chance to shoot any deer, and the deer population was large and needed to be reduced." We said the defendant did "not claim his conduct was necessary and appropriate for any purpose which would establish a justification or excuse recognized in N.D.C.C. ch. 12.1–05," and we concluded the evidence did not support an excuse instruction. *Ness*, at ¶ 18.

[¶ 10] In *State v. Fridley*, 335 N.W.2d 785, 787 (N.D.1983), a motor vehicle operator convicted of driving while his license was revoked claimed a defense of excuse based upon a mistake of law. We held the defense of excuse based upon a mistake of law was not applicable to prosecutions for driving under a revoked license, because that offense was a strict liability offense for which proof of culpability was not required. *Id.* We said because the mistake-of-law defense was not applicable to a prosecution for driving with a revoked license, the driver's "conduct could not be 'necessary and appropriate for any of the purposes which would establish a justification or excuse under ... [Chapter 12.1, *i.e.*, mistake of law under § 12.1–05–09, N.D.C.C.]' . . . . Therefore, excuse, as set

forth in § 12.1–05–08, N.D.C.C., is equally inapplicable." *Fridley*, at 790.

[¶ 11] A common thread in our cases about excuse is that the circumstances of a defendant's claimed excuse must be necessary and appropriate for one of the purposes that could establish a justification or excuse under N.D.C.C. ch. 12.1–05. *See Ness*, 2009 ND 182, ¶ 18, 774 N.W.2d 254 (stating defendant did not claim conduct was necessary and appropriate for any purposes which would establish justification or excuse recognized under N.D.C.C. ch. 12.1–05); *State v. Rasmussen*, 524 N.W.2d 843, 844–46 (N.D.1994) (holding affirmative defense of threat of imminent death or serious bodily injury available for driving under suspension when compulsion is from life-threatening forces of nature); *State v. Purdy*, 491 N.W.2d 402, 411 (N.D.1992) (stating jury was instructed on excuse based upon mistake of law under N.D.C.C. §§ 12.1–05–08 and 12.1–05–09); *State v. Ronne*, 458 N.W.2d 294, 296–97 (N.D.1990) (holding defendant not entitled to instruction on excuse premised on defense of others where defendant did not request accompanying instruction on defense of others or on any other conduct which constitutes a justification under N.D.C.C. ch. 12.1–05, and there was no evidence other person was in any danger to have been justified in defending himself or that defendant reasonably believed other person would have been justified in defending himself); *State v. Nygaard*, 447 N.W.2d 267, 272 (N.D. 1989) (holding defendant not entitled to excuse instruction in prosecution for failing to notify owner upon striking unattended vehicle; mistaken belief no collision occurred could not be "'necessary and appropriate for any of the purposes which would establish a justification or excuse under'" N.D.C.C. ch. 12.1–05); *Fridley*, 335 N.W.2d at 790 (stating defendant's

conduct could not be necessary and appropriate for any purposes which would establish a justification or excuse under N.D.C.C. ch. 12.1–05).

[¶ 12] Here, Zottnick claims phone records in evidence established he was entitled to an excuse instruction because Abt initiated contact with him to reestablish a prior relationship and to ask him to go to counseling with her. Zottnick claims that Abt told him the "ball was in his court" and it was understandable that he would respond to try to preserve their relationship. He thus argues he could have easily believed their relationship would be over if he did not respond to Abt. However, Zottnick did not ask for an accompanying instruction for any separate purpose which would establish a justification or excuse recognized under N.D.C.C. ch. 12.1–05. *See Ronne*, at 297. Significantly, the October 19, 2009 order explicitly stated that Abt's consent did not invalidate the order prohibiting contact, and Zottnick did not present any evidence to establish he had taken any affirmative steps to assure himself that his conduct would not violate the law. *See State v. Lang*, 378 N.W.2d 205, 208–09 (N.D.1985) (discussing affirmative defense of mistake of law under N.D.C.C. § 12.1–05–09 in context of justification or excuse). Moreover, Zottnick did not present evidence or claim his conduct was necessary and appropriate for any other purposes which would establish a justification or excuse recognized under N.D.C.C. ch. 12.1–05. *See Ness*, at ¶ 18; *Ronne*, at 297; *Nygaard*, at 272; *Fridley*, at 790. Under these circumstances, we conclude the district court did not err in refusing to give Zottnick's requested instruction on excuse.

III

[¶ 13] Zottnick argues the evidence was insufficient to support his conviction.

[¶ 14] In *State v. Wanner*, 2010 ND 121, ¶ 9, 784 N.W.2d 143 (quoting *State v. Dahl*, 2009 ND 204, ¶ 6, 776 N.W.2d 37), we outlined our standard of review for challenges to the sufficiency of the evidence:

Appellate review of the sufficiency of the evidence for a jury verdict is very limited. When the sufficiency of evidence to support a criminal conviction is challenged, this Court merely reviews the record to determine if there is competent evidence allowing the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction. The defendant bears the burden of showing the evidence reveals no reasonable inference of guilt when viewed in the light most favorable to the verdict. When considering insufficiency of the evidence, we will not reweigh conflicting evidence or judge the credibility of witnesses.... A jury may find a defendant guilty even though evidence exists which, if believed, could lead to a verdict of not guilty.

[¶ 15] Here, the district court instructed the jury on the essential elements of violating an order prohibiting contact:

The State's burden of proof on the charge against Ryan Douglas Zottnick is satisfied if the evidence shows, beyond a reasonable doubt, the following essential elements:

1. On or about October 19, 2009, an Order Prohibiting Contact was issued by the District Court which prohibited Ryan Douglas Zottnick from having contact with Katie Abt; and

2. That, prior to November 1, 2009, Ryan Douglas Zottnick had notice of the Order Prohibiting Contact with Katie Abt;

3. Thereafter, on or about November 1, 2009 through November 3, 2009 in Burleigh County, North Dakota;

4. The Defendant Ryan Douglas Zottnick;

5. Willfully

6. Had direct contact with Katie Abt in a manner which violated the provisions of the Order Prohibiting Contact.

[¶ 16] There is evidence there were numerous cell phone and text message contacts from Zottnick's phone numbers to Abt from November 1 through 3, 2009, and one incident where he came to her parents' house on November 2 while she was there and pounded on the door. There was also evidence of an audio recording of a message left on Abt's phone. There is competent evidence from which the jury could find Zottnick guilty of violating the order prohibiting contact with Abt. Viewing the evidence in the light most favorable to the verdict under our deferential standard of review, we conclude there is sufficient competent evidence to support the jury verdict.

IV

[¶ 17] We affirm the judgment of conviction.

[¶ 18] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.