STATE of Wisconsin, Plaintiff-Respondent,

v.

Stephen P. BROWN, Defendant-Appellant-Petitioner.

Supreme Court

*No. 81–033.  Argued March 3, 1982.—Decided April 27, 1982.*
(Also reported in 318 N.W.2d 370.)

For the defendant-petitioner there was a brief (in this court) by *Patrick F. Brown* and *Steven J. Steinhoff* of Waukesha, and oral argument by *Mr. Brown.*

For the plaintiff-respondent there was a brief (in court of appeals) by *Richard A. Perkins,* district attorney

for Jefferson county, and oral argument by *Steven Tinker*, assistant district attorney.

SHIRLEY S. ABRAHAMSON, J.   The defendant appealed from a judgment of the circuit court for Jefferson county, John B. Danforth, circuit judge, entered on a jury verdict finding the defendant guilty of speeding in violation of sec. 346.57(4)(h), Stats. 1979–80.[1] The court of appeals in an unpublished decision, *State v. Brown,* filed July 28, 1981, affirmed the judgment of the circuit court. We reverse the decision of the court of appeals and remand the case to the circuit court for further proceedings consistent with this opinion.

The two issues raised in the court of appeals are raised in this review, to wit: (1) Did the circuit court err in excluding evidence and in refusing to submit jury instructions and special verdict questions pertaining to the arresting officer's alleged violation of sec. 345.55, Stats. 1979–80;[2] and (2) Did the circuit court err in re-

---

[1] Sec. 346.57(4)(h), Stats. 1979–80, provides:

"(4) **Fixed limits.** In addition to complying with the speed restrictions imposed by subs. (2) and (3), no person shall drive a vehicle at a speed in excess of the following limits unless different limits are indicated by official traffic signs:

". . .

"(h) In the absence of any other fixed limits or the posting of limits as required or authorized by law, 55 miles per hour

. . . ."

The penalty for violation of sec. 346.57(4)(h) appears in sec. 346.60(2), Stats. 1979–80:

"(2) Except as provided in sub. (5), any person violating s. 346.57(4)(d) to (h) or (5) or 346.58 may be required to forfeit not less than $20 nor more than $200."

[2] Sec. 345.55, Stats. 1979–80, pertaining to traffic officers not profiting from arrests, provides as follows:

"345.55   **Traffic officers not to profit from arrests.**

"(1) No traffic officer shall demand, solicit, receive or be paid any remuneration upon the basis of number of arrests made, convictions obtained or amount of fines collected.

fusing to submit jury instructions and special verdict questions based upon the defendant's claim of legal justification, that is, that his conduct, although otherwise in violation of the law, is excusable on the ground of self-defense, necessity, coercion or entrapment.

## I.

The facts are in dispute. On the evening of November 13, 1978, the defendant, Stephen P. Brown, then 16 years old, was driving east from Madison to his home in Waukesha on Interstate Highway 94. With him in the car was his 10-year-old sister. The defendant testified he was traveling in the right-hand lane "at the speed limit" (55 miles per hour) when he noticed a vehicle behind him swerving in a "rather violent manner." According to the defendant, the vehicle approached the rear of his car at a high rate of speed until it was five or ten feet from his rear bumper. The vehicle then proceeded past the defendant's car and reentered defendant's lane, slowing to a speed which the defendant estimated at 15 to 25 miles per hour. When the defendant attempted to pass the vehicle it speeded up to match the speed of the defendant's car and took a position in defendant's "blind spot" (to the right rear of defendant's car). The defendant testified that when he attempted to get the vehicle out of his blind spot by speeding up and slowing down, which he did several times, the vehicle matched his speed changes to maintain its position. The driving pattern of the vehicle, which defendant characterizes as wild and erratic, alarmed the defendant and put him in

"(2) Any person violating this section may be required to forfeit not less than $25 nor more than $200 for the first offense and, for the second and each subsequent conviction within one year thereafter, may be required to forfeit not less than $50 nor more than $500."

fear of a physical confrontation with the driver of the vehicle. In his testimony the defendant admitted that he accelerated to a speed of 72 miles per hour to try to get away from the vehicle and that he exceeded the lawful speed limit. The vehicle which had "harassed" the defendant then displayed flashing red lights and signaled the defendant to pull over. The defendant stopped and was issued a citation by the driver of the vehicle, a state patrol officer, for traveling at 72 miles per hour, 17 miles per hour over the legal limit of 55, in violation of sec. 346.57 (4) (h), Stats. 1979–80.

Although both the defendant and the state patrol officer agree that the defendant's car was traveling at the speed of 72 miles per hour, the officer's version of the events preceding the issuance of the citation differs substantially from that of the defendant. The officer testified that he was on routine patrol in an unmarked state patrol car proceeding east on I–94 at a speed of between "fifty and fifty-five miles an hour" when the defendant's car passed him on the left. The officer said that he increased the speed of his vehicle to match the speed of the defendant's car, that his vehicle remained approximately 250 feet behind defendant's car for a half mile, and that when his vehicle's speedometer registered between 72 and 74, he turned on the red lights, pulled the defendant to the side of the road and issued the citation.

At trial the defendant offered testimony to establish that the department of transportation evaluates the performance of its officers by, among other things, determining the number of citations issued per hour by each officer.[3] The defendant requested instructions relating

---

[3] Defendant's offer of proof consisted of the testimony of two witnesses: Barbara Bird, Counsel to the Department of Transportation, and Jeffery Jansen, President of the State Trooper's Union. Both were heard in the absence of the jury and both testified that citations issued per hour was a factor considered in trooper evaluation; they disagreed over the importance of this factor.

to the invalidity of the citation on the ground of official misconduct, namely, evaluating the officer's performance on the basis of number of citations issued violates sec. 345.55, Stats. 1979–80. The circuit court ruled the testimony irrelevant and inadmissible and refused to submit the defendant's proposed instructions.

In addition, the defendant submitted jury instructions to the circuit court relating to his claim of legal justification, that is, that he should be excused of liability because his conduct was in defense of his sister and in self-defense, occurred under circumstances of coercion or necessity, or was caused by improper law enforcement methods (entrapment). The circuit court rejected defendant's proposed instructions and instructed the jury that if it found that the defendant's vehicle was exceeding the speed limit, it should find the defendant guilty. The circuit court instructed the jury as follows:

"It now becomes your duty to judge the guilt or innocence of the defendant to this charge. Section 346.57 (4) (h) of the Wisconsin Statutes is violated by one who drives a motor vehicle upon a public highway at a speed greater than the speed limit. In such a case there is no element of the offense charged which has to do with the state of the defendant's mind. Therefore, it is no defense in an action involving a charge of speeding that the driver of the vehicle may not have known the speed at which his vehicle was traveling. *The only question in this case is whether or not the defendant's vehicle in truth and fact was exceeding the speed limit with the defendant operating the vehicle at the time and place charged.*

". . . *Now, if you are satisfied to a reasonable certainty that the defendant was operating a motor vehicle at a rate of speed in excess of the 55 mile-per-hour limit, then you should find him 'Guilty.' If, however, you are not so satisfied, then you must find him 'Not Guilty'.*" (Emphasis supplied.)

After 30 minutes of deliberation the jury found the defendant guilty of speeding, and the circuit court entered

judgment on the verdict. The court of appeals affirmed the judgment of the circuit court, concluding that the officer's personal motivation in issuing the citation does not invalidate the citation and that the defendant's claim of legal justification is not available in a civil forfeiture action.

## II.

The defendant argues on review that because the officer's promotions and pay increases are based in part upon the number of citations he issues, the officer is receiving consideration for his enforcement activities in violation of sec. 345.55(1), Stats. 1979–80, and therefore the citation for speeding is void.

It is unnecessary to decide whether a quota system for citations and arrests exists and whether such a quota system would violate sec. 345.55, Stats. 1979–80. The defendant's argument fails because even if the officer were violating sec. 345.55, Stats. 1979–80, the citation issued would not necessarily be void.

Sec. 345.55(1), Stats. 1979–80, does not govern arrests, convictions or fines. Sec. 345.55(1) prohibits the officer from soliciting or receiving remuneration based upon the number of arrests, convictions or amount of fines. Violation of sec. 345.55(1) subjects the offending officer to the forfeiture set forth in sec. 345.55(2). Sec. 345.55 is silent about the validity of a citation issued by an offending officer.

If the legislature had intended a violation of sec. 345.-55(1), Stats. 1979–80, to void any action by the offending officer, including citations and arrests that are otherwise valid and within the scope of the officer's authority, we believe such intent would have been expressed clearly in the statute. In the absence of such expressed legislative intention, we conclude that a violation of sec.

345.55 does not invalidate the otherwise valid citation issued to the defendant and that the testimony offered by the defendant to establish a violation of sec. 345.55(1), Stats. 1979–80, was properly excluded by the circuit court as irrelevant for the purpose offered.

### III.

The second issue raised by the defendant, namely, whether his claim of legal justification is available in an action for violating the speed limit, poses a more troublesome question.

At trial the defendant requested jury instructions on self-defense, coercion or necessity, and entrapment, defenses well recognized in the criminal law.[4]

---

[4] Self-defense, coercion and necessity are statutory defenses to criminal conduct. Sec. 939.45 provides as follows:

"Sec. 939.45. **Privilege.** The fact that the actor's conduct is privileged, although otherwise criminal, is a defense to prosecution for any crime based on that conduct. The defense of privilege can be claimed under any of the following circumstances:

"(1) When the actor's conduct occurs under circumstances of coercion or necessity so as to be privileged under s. 939.46 or 939.47;

"(2) When the actor's conduct is in defense of persons or property under any of the circumstances described in s. 939.48 or 939.49; . . ."

[5] Sec. 939.48, Stats. 1979–80, provides as follows:

"939.48. **Self-defense and defense of others.** (1) A person is privileged to threaten or intentionally use force against another for the purpose of preventing or terminating what he reasonably believes to be an unlawful interference with his person by such other person. The actor may intentionally use only such force or threat thereof as he reasonably believes is necessary to prevent or terminate the interference. He may not intentionally use force which is intended or likely to cause death or great bodily harm unless he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself.

". . .

While the defenses of self-defense,[5] coercion,[6] necessity,[7] and entrapment[8] are well accepted in criminal law,

"(3) The privilege of self-defense extends not only to the intentional infliction of harm upon a real or apparent wrongdoer, but also to the unintended infliction of harm upon a third person, except that if such unintended infliction of harm amounts to the crime of injury by conduct regardless of life, injury by negligent use of weapon, homicide by reckless conduct or homicide by negligent use of vehicle or weapon, the actor is liable for whichever one of those crimes is committed.

"(4) A person is privileged to defend a third person from real or apparent unlawful interference by another under the same conditions and by the same means as those under and by which he is privileged to defend himself from real or apparent unlawful interference, provided that he reasonably believes that the facts are such that the third person would be privileged to act in self-defense and that his intervention is necessary for the protection of the third person."

[6] Sec. 939.46, Stats. 1979–80, provides as follows:

"939.46. Coercion. (1) A threat by a person other than the actor's coconspirator which causes the actor reasonably to believe that his act is the only means of preventing imminent death or great bodily harm to himself or another and which causes him so to act is a defense to a prosecution for any crime based on that act except that if the prosecution is for murder the degree of the crime is reduced to manslaughter.

"(2) It is no defense to a prosecution of a married person that the alleged crime was committed by command of the spouse nor is there any presumption of coercion when a crime is committed by a married person in the presence of the spouse."

[7] Sec. 939.47, Stats. 1979–80, provides as follows:

"939.47. Necessity. Pressure of natural physical forces which causes the actor reasonably to believe that his act is the only means of preventing imminent public disaster, or imminent death or great bodily harm to himself or another and which causes him so to act, is a defense to a prosecution for any crime based on that act except that if the prosecution is for murder the degree of the crime is reduced to manslaughter."

[8] Entrapment is a judicially established defense in Wisconsin. Entrapment occurs when, for the purpose of obtaining evidence, a law enforcement officer conceives the idea of a crime and induces the defendant to commit the conduct constituting the crime. *State of Wisconsin ex rel. Monsoor v. Gagnon*, 497 F.2d 1126 (7th

and similar defenses are recognized in tort law,[9] the applicability of these defenses to strict liability civil forfeiture offenses is less clear.[10]

The parties do not dispute that sec. 346.57(4)(h), Stats. 1979–80, establishes a "strict liability"[11] civil offense.[12] The state maintains, however, that sec. 346.-57(4)(h) creates not only a strict liability offense in the sense that the statute eliminates proof of defendant's state of mind but also creates an absolute liability offense in the sense that every violation of the literal terms

---

Cir. 1974); *State v. Hochman,* 2 Wis. 2d 410, 86 N.W.2d 446 (1957).

[9] Prosser, Torts secs. 19, 24 (4th ed. 1971).

[10] Until 1971, violation of sec. 346.57(4)(h) was a criminal offense and, according to counsel for the state at oral argument, subject to these defenses. The defendant cites no authority which directly supports his position that a claim of legal justification applies to traffic law offenders. Several cases cited by the defendant in support of his position are not on point. Some cases involve personal injury actions in which a party's violation of a traffic regulation was determined not to constitute negligence per se. Others involve violations of traffic laws which include an element of culpability or which set forth a defense.

While no case has been cited which expressly accepts the defenses of self-defense, coercion, necessity or entrapment, some courts have intimated in dicta that the claim of legal justification is available as a defense in prosecutions for strict liability traffic offenses. See *e.g., State v. Baker,* 1 Kan. App. 2d 568, 571 P.2d 65 (1977); *City of Des Moines v. Davis,* 214 N.W.2d 199 (Iowa 1974); *State v. Johnson,* 289 Minn. 196, 183 N.W.2d 541 (1971); *State v. Willers,* 75 S.D. 356, 64 N.W.2d 810, 811 (1954); *People v. Pulizzi,* 199 Misc. 405, 106 N.Y.S.2d 680, 683 (Magis. Ct. N.Y. 1950). Other courts have rejected this approach. See, *e.g., Commonwealth v. Koons,* 216 Pa. Super. 402, 268 A.2d 202, 203 (1970).

[11] For recent cases of this court discussing strict liability offenses, *see State v. Stanfield,* 105 Wis. 2d 553, 314 N.W.2d 339 (1982); *State v. Stepniewski,* 105 Wis. 2d 261, 314 N.W.2d 98 (1982); *State v. Collova,* 79 Wis. 2d 473, 255 N.W.2d 581 (1977).

[12] For a discussion of the civil nature of violations of state traffic laws involving forfeitures, see *State v. Peterson,* 104 Wis. 2d 616, 621–22, 312 N.W.2d 784 (1981).

of the statutes renders the offender guilty without exception. The doing of the proscribed act constitutes the wrong, argues the state, and the moral turpitude (scienter or state of mind) or purity of motive (justification) which prompts the proscribed act are not material to the question of guilt. The state's position, which is supported by the legislature's failure to specify any defenses to the offense, was adopted by the circuit court and the court of appeals.[13]

We conclude that recognizing a defense of legal justification does not necessarily conflict with the concept that violation of a traffic law is a strict liability offense. The basic concept of strict liability is that culpability is not an element of the offense and that the state is relieved of the burdensome task of proving the offender's culpable state of mind. When the defendant in the case at bar claims legal justification, he is not seeking to disprove a statutorily required state of mind. Instead he is claiming that even though he knowingly violated the law, his violation was privileged under the circumstances.

While the original rationalization of the defenses of self-defense, coercion, necessity and entrapment "may have been based on the notion that moral culpability was absent . . . the real basis for the defenses is that the conduct is justified because it preserves or has a tendency to preserve some greater social value at the expense of a lesser one in a situation where both cannot be preserved."

[13] The circuit court and court of appeals concluded as a matter of law that the defenses asserted by the defendant were not available in a civil forfeiture action. The court of appeals reasoned that because the defenses advanced by the defendant in this case are traditionally applicable only to crimes, sec. 939.20, and because the legislature has accorded drivers narrow privileges to violate traffic laws in cases of authorized emergency vehicles, sec. 346.03, Stats. 1979–80, the legislature did not intend to make the defenses of legal justification available to a speeding offender.

Remington and Helstad, *The Mental Element in Crime —A Legislative Problem,* 1952 Wis L Rev 644, 655. See also *Moes v. State,* 91 Wis. 2d 756, 768, 284 N.W.2d 66 (1979) ; La Fave and Scott, *Criminal Law,* sec. 48, p 372 (1972).

If we were to consider only the "scienter" aspect of strict liability we might conclude that the defendant's claim of legal justification does not relate to scienter, and we would recognize the defense of legal justification. But we must go further. We must, in determining whether to recognize the defenses claimed, consider the reason scienter is eliminated as an element of the offense. One of the objectives of the legislature in adopting the concept of strict liability in statutes designed to control conduct of many people, such as operating motor vehicles is to assure the quick and efficient prosecution of large numbers of violators. Where the conduct is harmful and the number of prosecutions anticipated is large, the legislature will often define the offense in such a way as to avoid the need for lengthy trials. Although the claimed defenses, if allowed in prosecutions of strict liability offenses, may not relate to scienter, they do impair the ease with which these cases are processed. Consequently when determining whether we should recognize any defenses to a strict liability traffic offense, we must determine whether the public interest in efficient enforcement of the traffic law is outweighed by other public interests which are protected by the defenses claimed.

There are several public interests protected by the defenses claimed. The privilege of self-defense rests upon the need to allow a person to protect himself or herself or another from real or perceived harm when there is no time to resort to the law for protection. The rationale of the defenses of coercion and necessity is that for reasons of social policy it is better to allow the

defendant to violate the criminal law (a lesser evil) to avoid death or great bodily harm (a greater evil). Hall, *General Principles of Criminal Law* 425–26 (2d ed. 1960); La Fave & Scott, *Criminal Law* secs. 49, 50 (1972). The public policy for recognizing entrapment as a defense is not to avoid some other harm to the defendant but to deter reprehensible police conduct. "The applicable principle is that courts must be closed, to the trial of a crime instigated by the government's own agents." *Sorrells v. United States*, 287 U.S. 435, 459 (1932).

Although sec. 346.57(4)(h) does not specify any defenses, we do not believe that the legislature intended to condone official misconduct by allowing the state to prosecute successfully speeding offenses that are caused by the state's agents. The traffic laws of this state are the citizen's primary exposure to law enforcement; for many citizens traffic law is the only area in which they have direct contact with law enforcement officers. Therefore it is particularly important in the enforcement of traffic laws that the public perceive a policy of even-handed and just law enforcement. If citizens are expected to deal fairly with the state and respect the laws, the state must deal fairly with its citizens and show respect for its citizens.

Where the violation of the speeding law is caused by the state itself through the actions of a law enforcement officer, we conclude that the public interest in allowing the violator to claim a defense outweighs the public interest in ease of prosecution. Accordingly we hold that where a violation of sec. 346.57(4)(h), Stats. 1979–80, occurs, the actor may claim the defense of legal justification if the conduct of a law enforcement officer causes the actor reasonably to believe that violating the law is

the only means of preventing bodily harm to the actor or another and causes the actor to violate the law. We need not and we do not decide whether a defense of legal justification is available to the defendant in a civil forfeiture action for speeding if the causative force is someone or something other than a law enforcement officer. We decide only that a defendant in a civil forfeiture action for speeding may claim that his violation of the law should be excused if it was caused by the state itself through the actions of a law enforcement officer.

In strict liability offenses, perhaps more than in other types of offenses, the legislature relies on prosecutors to exercise their discretion in determining whether or not to prosecute. While we do not mean to imply that prosecution was unwarranted in this case, we take this opportunity to note again the importance of the judicious exercise of prosecutorial discretion in prosecution. Prosecutorial discretion can achieve the flexibility and sensitivity which, of necessity, are lacking on the face of a statute imposing strict liability. The prosecutor is not required to prosecute all cases in which it appears that the law has been violated. This court has characterized the prosecutor's charging discretion as "quasi-judicial," in the sense that it is his duty to administer justice rather than to obtain convictions. The legislature and the people rely on the prosecutor to exercise discretion to prosecute only those persons who appear deserving of a penalty. SCR 20.34(2)(j)(k) (1982); *City of Janesville v. Wiskia,* 97 Wis. 2d 473, 480–82, 293 N.W. 2d 522 (1980); *State v. Karpinski,* 92 Wis. 2d 599, 607–09, 285 N.W.2d 729 (1979); *Locklear v. State,* 86 Wis. 2d 603, 609, 273 N.W.2d 334 (1979). Frivolous or unreasonable prosecution of the traffic laws will incur the wrath of the people, and there will be a clamor for the creation of further defenses, defenses which might significantly impede the efficient prosecution of traffic offenders.

We, therefore, remand the cause for a new trial. If the jury properly instructed as to the defense of legal justification (which we have set forth herein) chooses to believe the testimony of the defendant, rather than the testimony of the officer, the jury may find the defendant not guilty of violating sec. 346.57 (4) (h).

For the reasons set forth, the decision of the court of appeals is reversed, the judgment of the circuit court is reversed, and the case is remanded to the circuit court for a new trial.

*By the Court.*—The decision of the court of appeals is reversed; the case is remanded to the circuit court for a new trial.

CECI, J., took no part.

WILLIAM G. CALLOW, J. *(concurring).* I agree with the majority that an alleged strict liability offense which was provoked by a law enforcement officer is properly subject to the defense of legal justification. I believe, however, that in making traffic violations strict liability offenses, the legislature has determined that the public interest in highway safety and the expeditious enforcement of traffic laws outweighs an individual defendant's interests of a personal nature in any other circumstances.

The majority does not reach the issue of whether a defense of legal justification will be recognized if the causative force is someone or something other than the conduct of law enforcement personnel. (*Supra,* p 56.) I would reach this issue, and I would not extend the defense of legal justification beyond conduct provoked by law enforcement personnel. Recognizing any defense of "excusable conduct" stemming from a defendant's perceived justifications would require, in my opinion, the prosecuting authority to prove the defendant's culpable

state of mind and rebut the defense of justification for the admitted misconduct. I believe this defeats the primary premise that the public must obey traffic regulations in order to protect and promote public safety. The traveling public should be able to rely on the absolute requirement that traffic laws must be obeyed. The proposition that each driver could selectively evaluate the situation and violate the law with an expectation of impunity is unthinkable. A rule permitting judicial recognition of a defense of legal justification or excusable misconduct in any situation other than that reflected in the majority opinion would not only contravene well-established public policy, but it would have a disastrous impact on the judicial system, resulting in burgeoning the court calendar with traffic cases.

If there are any excusable circumstances, both the law enforcement officer on the road and the prosecuting authority are clothed with substantial discretion. They are a first and second echelon of authority to evaluate the facts of each case to determine whether prosecution is warranted. The broad range of penalties for most traffic offenses gives a third echelon of authority, the judge, latitude in imposing a modest penalty in an appropriate case. For these reasons, I make the declaration set forth in this concurrence.

I am authorized to state that Chief Justice Bruce F. Beilfuss joins in this concurring opinion.