(807 P.2d 697)
No. 65,288

STATE OF KANSAS, *Appellee*, v. RONALD D. RIEDL, *Appellant*.

Opinion filed March 15, 1991.

*Richard Sanborn*, of Sanborn & Mills, Chartered, of Wichita, for appellant.

*Bruce L. Stewart*, assistant district attorney, *Nola Foulston*, district attorney, and *Robert T. Stephan*, attorney general, for appellee.

Before BRAZIL, P.J., LARSON and GERNON, JJ.

GERNON, J.: Ronald Riedl was convicted of failure to stop at a stop sign, driving while under the influence of alcohol or drugs, refusing to submit to a preliminary breath test, and failure to stop at the scene of an accident. Other charges of failure to wear a seat belt and failure to provide proof of liability insurance were dismissed by the State prior to trial. The trial court found Riedl not guilty of driving at a speed greater than prudent and of fleeing or attempting to elude a police officer. Riedl appeals.

The trial court denied Riedl's motion for a judgment of acquittal, which asserted a lack of identification evidence, and ruled,

as a matter of law, that the compulsion defense was not available to the offenses with which he was charged.

Identification

Riedl's challenge to the court's ruling concerning the identification issue has no merit.

The testimony of Officers Costello and Bowman adequately identified Riedl as the individual they encountered at the time and place in question. In addition, Riedl conceded he was the driver the officers encountered. Further, Riedl stipulated that he and a companion were the ones stopped by Costello and Bowman.

Compulsion

Riedl's challenge to the trial court's ruling that, as a matter of law, the compulsion defense was not available to the offenses with which he is charged is one of first impression in Kansas. The precise question is whether compulsion is a legally recognizable defense to an absolute liability traffic offense.

K.S.A. 21-3209 provides:

"(1) A person is not guilty of a crime other than murder or voluntary manslaughter by reason of conduct which he performs under the compulsion or threat of the imminent infliction of death or great bodily harm, if he reasonably believes that death or great bodily harm will be inflicted upon him or upon his spouse, parent, child, brother or sister if he does not perform such conduct.

"(2) The defense provided by this section is not available to one who willfully or wantonly places himself in a situation in which it is probable that he will be subjected to compulsion or threat."

Appellate review of a question of law is unlimited. *Hutchinson Nat'l Bank & Tr. Co. v. Brown*, 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 (1988).

We have previously stated that certain traffic violations are "absolute liability" offenses. See *City of Wichita v. Hull*, 11 Kan. App. 2d 441, 445, 724 P.2d 699 (1986) (driving under the influence); *City of Overland Park v. Estell*, 8 Kan. App. 2d 182, 187, 653 P.2d 819 (1982), *rev. denied* 232 Kan. 875 (1983) (leaving the scene of an accident); *State v. Baker*, 1 Kan. App. 2d 568, 569, 571 P.2d 65 (1977) (speeding).

In *Hull*, Judge Briscoe wrote that "[t]he only proof required to convict an individual of an absolute liability offense is that the

individual engaged in the prohibited conduct." 11 Kan. App. 2d at 443.

In the case before us, Riedl and a friend went to a bar and drank beer for approximately two hours. When they left the bar, they were confronted by three people in the parking lot standing near Riedl's vehicle. One of the three shouted a threat to Riedl. Riedl testified he reached for his keys, was punched by one of the three, ran for his car, got in, and started the vehicle.

Riedl concedes he hit another car while attempting to get away. Traveling toward the direction of his home, Riedl's speed attracted the attention of Officers Costello and Bowman some five miles from the site of the confrontation.

Riedl contends that the fact that he had had two friends killed in bar fights and that he had worked in a hospital contributed to his state of mind and his "compulsion" to act as he did.

Our threshold question is whether the defense of compulsion is available to a defendant charged with this type of offense. We conclude that it is.

"The fundamental rule of statutory construction is that the intent of the legislature governs. [Citation omitted.] When construing a statute, a court should give words in common usage their natural and ordinary meaning." *Hill v. Hill*, 13 Kan. App. 2d 107, 108, 763 P.2d 640 (1988).

"Interpretation of a statute is a question of law, and it is the function of the court to interpret a statute to give it the effect intended by the legislature." *Director of Taxation v. Kansas Krude Oil Reclaiming Co.*, 236 Kan. 450, 455, 691 P.2d 1303 (1984).

When enacting K.S.A. 21-3209, the legislature created specific exceptions: the compulsion defense is not applicable to charges of murder or voluntary manslaughter. The legislature could easily create an additional exception for strict liability traffic offenses if it so desired. In addition, the Kansas Supreme Court's decision in *State v. Hunter*, 241 Kan. 629, 740 P.2d 559 (1987), cautions against judicial creation of additional exceptions. In that case, the court concluded that the compulsion defense was applicable to charges of felony murder. 241 Kan. at 642. The court noted the statutory defense, including the murder and voluntary manslaughter exception, "evolved from the common-law policy" which per-

mitted the assertion of this defense against criminal charges. 241 Kan. at 640.

We conclude that Kansas case law supports a conclusion that the compulsion defense is applicable to this type of offense. This court's decisions, along with K.S.A. 21-3204, simply indicate that proof of criminal intent is not required for conviction of an absolute liability offense. See *City of Overland Park v. Estell*, 8 Kan. App. 2d at 187; *State v. Baker*, 1 Kan. App. 2d at 569.

The case law and the statute do not specifically indicate that a defense of legal justification is precluded. This court has implied that such defenses remain available. In *Baker*, this court stated: "We have no doubt but that if defendant were able to establish that his act of speeding was the result of an unforeseen occurrence or circumstance, which was not caused by him and which he could not prevent, that such would constitute a valid defense to the charge." 1 Kan. App. 2d at 570.

Similarly, in *Estell*, we stated: "No doubt, if defendant could have shown he had somehow been rendered unaware of the accident, or because of injuries sustained had been removed from the scene under circumstances beyond his control, such would have been a valid defense to the charge." 8 Kan. App. 2d at 187.

The case law from other jurisdictions overwhelmingly supports the conclusion that the compulsion defense, or similar defenses, should be deemed applicable to traffic offenses which do not require proof of criminal intent. The State cites no authority for the proposition that such defenses are unavailable as a matter of law and no authority to support this proposition has been located.

The trial court relied heavily upon a concurring opinion in *State v. Brown*, 107 Wis. 2d 44, 57-58, 318 N.W.2d 370 (1982) (Callow, J., concurring). The *Brown* holding was that the defense of legal justification is available against a speeding charge where the justification arises from official misconduct of law enforcement officers. 107 Wis. 2d at 55. The court in *Brown* noted that it did not reach the issue of whether the defense would be available "if the causative force is someone or something other than a law enforcement officer." 107 Wis. 2d at 56. The court did note, however, that such a defense was not inherently inconsistent with a strict liability offense statute:

"We conclude that recognizing a defense of legal justification does not necessarily conflict with the concept that violation of a traffic law is a strict liability offense. The basic concept of strict liability is that culpability is not an element of the offense and that the state is relieved of the burdensome task of proving the offender's culpable state of mind. When the defendant in the case at bar claims legal justification, he is not seeking to disprove a statutorily required state of mind. Instead he is claiming that even though he knowingly violated the law, his violation was privileged under the circumstances." 107 Wis. 2d at 53.

The Wisconsin courts have not yet resolved the issue of extending the legal justification beyond conduct which was provoked by a law enforcement officer.

A number of jurisdictions have explicitly recognized the applicability of similar defenses to similar charges. See *Browning v. State*, 31 Ala. App. 137, 141, 13 So. 2d 54 (1943) (compulsion defense applicable to charge of reckless driving); *People v. Pena*, 149 Cal. App. 3d Supp. 14, 23, 197 Cal. Rptr. 264 (1983) (duress defense applicable to charge of driving under the influence); *State v. Messler*, 19 Conn. App. 432, 437, 562 A.2d 1138 (1989) (necessity defense applicable to speeding charge); *State v. Brown*, 306 Or. 599, 605-06, 761 P.2d 1300 (1988) (necessity defense applicable to charge of driving while license suspended); *State v. Olson*, 79 Or. App. 302, 304-05, 719 P.2d 55 (1986) (choice of evils defense applicable to charge of driving under the influence).

A number of decisions have implicitly accepted the applicability of similar defenses, while concluding the evidence was insufficient to raise the defense. See *Reeve v. State*, 764 P.2d 324, 326 (Alaska App. 1988) (necessity defense, charges of driving while intoxicated and driving without a license); *People v. Dover*, 790 P.2d 834, 836 (Colo. 1990) (emergency defense, speeding charge); *People v. Weiser*, 789 P.2d 454, 455-56 (Colo. App. 1989) (choice of evils defense potentially applicable to charge of driving after license revoked, but defendant's evidence was insufficient as a matter of law); *People v. Janik*, 127 Ill. 2d 390, 398-99, 537 N.E.2d 756 (1989) (necessity defense potentially applicable to charges of driving under the influence and leaving the scene of an accident, but defendant's evidence insufficient to raise the defense); *State v. Fee*, 126 N.H. 78, 80-81, 489 A.2d 606 (1985) (competing harms defense, driving under the influence charge);

*State v. Cooke*, 94 N.C. App. 386, 387, 380 S.E.2d 382 (1989) (coercion and duress defenses, driving while impaired charge); *Com. v. Hoke*, 381 Pa. Super. 70, 81, 552 A.2d 1099 (1989) (justification defense, leaving the scene of an accident charge); *State v. Squires*, 147 Vt. 430, 431, 519 A.2d 1154 (1986) (necessity defense, driving under the influence charge).

Once we accept the availability of the compulsion defense to absolute liability traffic offenses, we must examine the record carefully to determine whether there was sufficient evidence to invoke the compulsion defense.

The Kansas Supreme Court recently stated in *State v. Hunter*, 241 Kan. 629, Syl. ¶ 10:

"In order to constitute the defense of compulsion, the coercion or duress must be present, imminent, and impending, and of such a nature as to induce a well-grounded apprehension of death or serious bodily injury if the act is not done. The doctrine of coercion· or duress cannot be invoked as an excuse by one who had a reasonable opportunity to avoid doing the act without undue exposure to death or serious bodily harm. [Citation omitted.] In addition, the compulsion must be continuous and there must be no reasonable opportunity to escape the compulsion without committing the crime."

In *People v. Pena*, 149 Cal. App. 3d Supp. at 25-26, the elements of the duress defense were listed as: (1) the act charged as criminal must have been done to prevent a significant evil; (2) there must have been no adequate alternative to the commission of the act; (3) the harm caused by the act must not be disproportionate to the harm avoided; (4) the accused must entertain a good faith belief that his act was necessary to prevent the greater harm; (5) such belief must be objectively reasonable under all the circumstances; and (6) the accused must not have substantially contributed to the creation of the emergency.

At trial, Riedl did not argue that the compulsion defense was applicable to the charges of refusing to submit to a preliminary breath test and failure to stop at a stop sign. In addition, we conclude that the evidence was insufficient to establish the compulsion defense with respect to the charge of driving while under the influence of alcohol or drugs. The evidence fails to demonstrate that the compulsion was "continuous." See *State v. Dunn*, 243 Kan. 414, 421, 758 P.2d 718 (1988). Riedl himself testified,

"When I left out of there, I thought there was a *possibility* that the guys in the parking lot would chase us." (Emphasis added.) There is no evidence to indicate that Riedl was, in fact, followed. Riedl drove his vehicle for approximately five miles without stopping or otherwise seeking assistance. This lack of a continuous threat is fatal to any attempt to assert the compulsion defense. The distance traveled and the time involved provided Riedl with ample opportunity to withdraw from the criminal activity and seek aid. See *State v. Dunn*, 243 Kan. at 422; *State v. Myers*, 233 Kan. 611, 616, 664 P.2d 834 (1983).

The difficulty in this case is in the consideration of the charge of leaving the scene of an accident. Riedl testified he was between the entrance to the bar and his car when the confrontation began. Understandably, the trial court made no factual findings concerning the elements or requirements of the compulsion defense. Our reading of the record leads us to conclude that the evidence is uncertain as to whether Riedl had a reasonable opportunity to escape. Absent this evidence, we are required to reverse the conviction for leaving the scene of an accident and remand the case for further factual findings by the trial court.

The trial court erred in concluding that the compulsion defense was not applicable as a matter of law to absolute liability traffic offenses. However, the record clearly indicates that Riedl's evidence does not support the defense in so far as driving while under the influence of alcohol or drugs.

Our appellate courts have often stated that we will affirm a trial court's decision that is correct even though it may be based on an incorrect reason. "[W]here the trial court reaches the correct result based upon the wrong reason, this court will affirm the trial court." *State v. Shehan*, 242 Kan. 127, 131, 744 P.2d 824 (1987).

The conviction for leaving the scene of an accident is reversed and remanded for further factual findings.

Affirmed in part, reversed in part, and remanded.