**Robert J. CLUCAS, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–3692.**

Court of Appeals of Alaska.

July 19, 1991.

---

Arthur S. Robinson, Robinson, Beiswenger & Ehrhardt, Soldotna, for appellant.

Joseph N. Lavesque, Asst. Dist. Atty., Nathan A. Callahan, Dist. Atty., Kenai, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

## OPINION

Before BRYNER, C.J., MANNHEIMER, J., and ANDREWS, Superior Court Judge.[*]

BRYNER, Chief Judge.

Robert J. Clucas was convicted of operating a set gill net within 600 feet of another gill net. Clucas appeals, arguing that the district court erred in rejecting his proposed affirmative defense of "first in time, first in right." We reverse.

Clucas was arrested at Squarehead Cove in Tuxedni Bay on May 9, 1990. Fish and Wildlife Officers Mark Kruzick and Curtis

Bedingfield arrived at Squarehead Cove on May 8, 1990, during an open season of the herring gill net fishery. The officers saw approximately 100 to 150 gill nets in the cove, most separated from each other by only 100 to 300 feet, in violation of 5 AAC 27.435, which requires that nets be 600 feet apart. The officers patrolled the area in a small boat, spreading the word that citations would be issued the following day if the nets were not moved farther apart.

The next day, Clucas contacted the officers and told them that he would not move his gear, because he had set his nets first. Clucas claimed that another person, Hank Kroll, had subsequently placed his gear within 600 feet of Clucas'. Clucas was told that if he did not move his net, both he and Kroll would be issued citations. Later on that day, the officers issued citations after measuring a distance of 250–270 feet between Clucas' and Kroll's nets. Clucas was cited for violating 5 AAC 27.435 and AS 16.05.722. 5 AAC 27.435 provides:

*MINIMUM DISTANCE BETWEEN UNITS OF GEAR.* No set gill net may be set or operated within 600 feet of another set gill net, except that this provision does not apply in the Chinitna Bay subdistrict.

Alaska Statute 16.05.722 provides, in relevant part:

*Strict liability commercial fishing penalties.* (a) A person who without any culpable mental state violates AS 16.05.-440–16.05.690, or a regulation of the Board of Fisheries or the department governing commercial fishing, is guilty of a violation....

At trial, Clucas testified that he arrived in Squarehead Cove on May 1 and set his gear on May 1 and 2, and that Kroll set his gear on May 5. On May 6, Clucas asked Kroll to move his gear because it was too close to Clucas'. Clucas felt he had not been in violation of 5 AAC 27.435, because when he set his gear, there was no other net within 600 feet.

The prosecutor argued that Clucas' defense of "first in time, first in right" was

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

irrelevant because 5 AAC 27.435 is a strict liability offense.

The trial court found Clucas guilty, concluding that, since Clucas was charged with a strict liability offense, he was not entitled to defend on the basis that his gear was set first. The court stated that the "first in time, first in right" defense might have been applicable if the case had been charged as a misdemeanor, and might even have been applicable to the strict liability offense if the officers had not warned Clucas to move his nets. Under the facts of this case, however, the court ruled:

> [I]t doesn't make any difference whether you got there first or the other person got there first, because you were specifically warned, "Move your net or we'll cite you." And you elected at that point not to move your net, knowing full well that you were going to be cited. Under that particular set of facts, I guess I don't have any choice.

■ Two questions are raised on appeal: (1) is "first in time, first in right" a defense to criminal charges for violating the minimum distance between units of fishing gear?; and (2) if so, is the defense available when the offense is prosecuted as a strict liability violation?

The rule that the fisher first on a site has a right to fish that site to the exclusion of others has long been recognized in Alaska civil cases. *See, e.g., Snug Harbor Packing Co. v. Schmidt,* 394 P.2d 397, 399 (Alaska 1964); *Snug Harbor Packing Co. v. Miller,* 123 F.Supp. 150, 152 (D.Alaska 1954); *Lewis v. Libby, McNeil & Libby,* 113 F.Supp. 272, 274 (D.Alaska 1953); *General Fish Co. v. Markley,* 105 F.Supp. 968, 972 (D.Alaska 1952); *Lind v. Markley,* 105 F.Supp. 50, 53 (D.Alaska 1952); *Fisher v. Everett,* 66 F.Supp. 540, 548 (D.Alaska 1945). The rule was reiterated by the Alaska Supreme Court as recently as 1988. *See CWC Fisheries, Inc. v. Bunker,* 755 P.2d 1115, 1121 n. 16 (Alaska 1988).

The sole Alaska criminal case dealing with the "first in time, first in right" rule is *Canoe Pass Packing Co. v. United States,* 270 F. 533 (9th Cir.1921). The case is not directly on point here, but it strongly suggests that being first at a fishing cite is a defense to charges such as those brought against Clucas. The Canoe Pass Packing Company was convicted of four counts of fishing with a set net in Miles Lake, Alaska, within 600 feet of another net. This was in violation of an order of the Secretary of Commerce providing in part, "The lateral distance interval between all nets in Miles Lake shall be not less than 600 feet." *Id.* at 534.

The court rejected Canoe Pass' argument that it had taken possession of its fishing site prior to the opening of the fishing season by driving stakes and posting notices at the site. The court stated, "[H]e who after [the start of the fishing season] placed in the water a set net within the prohibited distance from another set net which was lawfully there was guilty of a violation of the law." *Id.* at 536. The court did not decide whether a person who was first at a site could be convicted, because there was sufficient evidence to support a finding that the company had set its nets either after or simultaneously with someone else.

In commenting on the sufficiency of the evidence, the *Canoe Pass* court said about Count 3, "When the defendants and the Abercrombie Company simultaneously placed nets 25 feet apart, both nets were placed in violation of the law, and thereafter, when the defendants, having lost their net, placed another within the prohibited distance of the Abercrombie net, they committed the offense which was charged." *Id.* at 537. The court remarked about the other counts:

> It is contended that there was no evidence sufficient to convict under Counts 1, 2, and 4. As to Count 1, there was testimony that, at the time when the defendant's net was set out, another net had been set out by the Abercrombie Packing Company, a distance of 50 feet therefrom. As to the second count, there was testimony that the Abercrombie Company set out a net at about 8:30 o'clock of June 5, and about half an hour later, the defendants put out a set net 200 feet therefrom. There was conflict

in the testimony as to which of these nets was first set out, but the jury found the facts adversely to the defendants. As to Count 4, there was testimony that on June 5, the defendants set out a net between two nets of the Abercrombie Company, each about 400 feet away from the defendant's net, and that the Abercrombie nets were set out about 10 minutes before that of the defendant's.

*Id.* While not directly addressing the issue, the court's language suggests that if Canoe Pass' nets had been set prior to those of the Abercrombie Company, the evidence would not have been sufficient to support the convictions.

Several of the civil "first in time" cases also support this conclusion. Typical of these cases is *Snug Harbor v. Schmidt*, 394 P.2d 397 (Alaska 1964), in which the Alaska Supreme Court upheld an award of compensatory damages to Schmidt. Schmidt had been fishing for salmon with a set net on Kalifonski Beach when the Snug Harbor Company installed a fish trap 550 feet from his net. A fisheries regulation in effect at the time provided:

> *Minimum Distance Between Units of Gear.* The distance by most direct water measurement from any part of one gill net or seine to any part of another gill net, seine, or trap shall not be less than 600 feet.

*Id.* at 398 n. 1. Both Schmidt and a Snug Harbor representative were arrested and prohibited from further fishing on the site.

Schmidt brought an action for damages against Snug Harbor for losses arising out of his arrest and the confiscation of his gear, and for being prevented from fishing during the remainder of the season. The supreme court rejected Snug Harbor's argument that Schmidt's claim was barred because both parties had been fishing in violation of the 600–foot regulation:

> Being first in time, appellee [Schmidt] had the right to fish the site in controversy to the exclusion of appellant's [Snug Harbor's] fish trap so long as he continued to occupy the site and operate his gear. Appellee was exercising that right and fishing legally when appellant unlawfully trespassed upon the site and commenced the operation of its trap. Appellee continued to fish, despite appellant's trespass, thus insisting on exercising what was his legal right. If appellee's fishing then became unlawful, it was solely because of appellant's unwarranted action in setting and operating its trap within 600 feet of appellee's net. Appellant's unjustifiable interference with appellee's fishing rights was the direct cause of the injury suffered by appellee when he was arrested and his gear confiscated and when he was prevented from taking fish during the remainder of the season. In these circumstances the rule that a court will refuse to aid a party whose claim is based upon his own illegal acts has no application. That rule may not be used as a defense by one, like appellant who was directly responsible for appellee's acts becoming illegal—if indeed they were ever illegal at all. What appellant is attempting to do is take advantage of its own wrongful act to prevent appellee from recovering compensation for his injuries. This we shall not permit. Compensatory damages were properly awarded.

*Id.* at 399. While *Schmidt* is not a criminal case, it appears to indicate that the supreme court would not have looked favorably upon Schmidt's criminal conviction had the conviction been appealed.

Of a similar persuasion is *Fisher v. Everett*, 66 F.Supp. 540 (D.Alaska 1945). In that case each party had set three nets, all too close to each other. Following the "first in time, first in right" rule, the court granted injunctive relief to both parties, stating:

> For the 1945 fishing season the ruling is: (1) that the plaintiff had paramount right to the site of his No. 1 net; (2) that the defendants had paramount right to the sites of their Nos. 2 and 3 nets; (3) that the plaintiff's Nos. 2 and 3 nets were unlawfully set and fished; and (4) that the defendants' No. 1 net was unlawfully set and fished.

*Id.* at 550.

These decisions establish that the "first in time, first in right" defense has consist-

ently been applied in Alaska civil cases. Although the issue has never been squarely addressed in the criminal context, the courts of Alaska have long assumed that the defense also applies to criminal charges of violating minimum distance fishing regulations. We conclude that the defense applies in criminal cases.

■■■ We turn next to the question of whether the defense should apply to strict liability violations under AS 16.05.722. The state argues that all defenses should generally be inapplicable in strict liability cases. This issue is one of first impression in Alaska. The question has arisen in other jurisdictions in the context of strict liability traffic offenses. We believe the better-reasoned cases are those that accept defenses in strict liability cases when the defenses are unrelated to culpable mental state.

Alaska Statute 16.05.722 authorizes the prosecution of persons who violate Alaska's Fish and Game statutes or fisheries regulations "without any culpable mental state." While the statute plainly establishes strict liability by eliminating the requirement of culpable mental state, it does not purport to establish absolute liability by eliminating other defenses that are unrelated to culpable mental state.

The distinction between "strict" and "absolute" liability has been recognized by courts in other jurisdictions. In *State v. Brown*, 107 Wis.2d 44, 318 N.W.2d 370 (1982), the court ruled that in a prosecution for the strict liability offense of speeding, "the actor may claim the defense of legal justification if the conduct of a law enforcement officer causes the actor reasonably to believe that violating the law is the only means of preventing bodily harm to the actor or another and causes the actor to violate the law." *Id.* 318 N.W.2d at 376. Brown claimed that he was speeding to avoid erratic and threatening driving of an officer in an unmarked patrol car. The court rejected the state's argument that speeding was "not only a strict liability offense in the sense that the statute eliminates proof of defendant's state of mind but also creates an absolute liability of-

fense in the sense that every violation of the literal terms of the statutes renders the offender guilty without exception." *Id.* at 375. The court held:

> We conclude that recognizing a defense of legal justification does not necessarily conflict with the concept that violation of a traffic law is a strict liability offense. The basic concept of strict liability is that culpability is not an element of the offense and that the state is relieved of the burdensome task of proving the offender's culpable state of mind. When the defendant in the case at bar claims legal justification, he is not seeking to disprove a statutorily required state of mind. Instead he is claiming that even though he knowingly violated the law, his violation was privileged under the circumstances.

*Id.*

The Supreme Court of South Dakota also distinguishes between strict liability and absolute liability offenses. In *State v. Willers*, 64 N.W.2d 810 (S.D.1954), the court held that a person charged with the strict liability offense of permitting or causing a motor truck to be operated on a public highway without an adequate horn had a defense of excuse in "conditions in which the person involved could not reasonably be expected to know that he was omitting or committing an act contrary to the statute or ... be expected to act otherwise." *Id.* at 811. Although the court recognized that it was not necessary for the state to prove specific criminal intent or guilty knowledge it held, "[t]his does not mean however that the statute is absolute in the sense that every violation of its express terms renders one guilty under the law." *Id.* The court recognized an affirmative defense which put the burden of proof on the defendant.

In contrast to the approach taken by the Wisconsin and South Dakota courts, the Kansas Supreme Court has ruled that a defense of legal excuse does not apply to strict liability offenses. *State v. Merrifield*, 180 Kan. 267, 303 P.2d 155 (1956). Merrifield was charged with the strict liability offense of driving while his license was revoked. He claimed that driving

from his home to the county jail was excused, because the sheriff had told him to come to the jail to talk. The court rejected this argument in broad terms:

> It is clear that the statute makes it unlawful to drive a vehicle on the highways when the license to so drive has been suspended. The legislature made no exceptions, and the question of intent is not involved, and the motive or the circumstances under which the driving took place are immaterial. The legislature may forbid the doing of an act and make its commission criminal without regard to the intent or knowledge of the doer, and where the legislative intention appears, it is incumbent upon the court to give it effect, although the intent of the doer may have been innocent. The doing of an inhibited act constitutes the crime, and the moral turpitude or purity of motive by which it is prompted, and knowledge or ignorance of its criminal character, are immaterial circumstances on the question of guilt.

*Id.* 303 P.2d at 157. The *Merrifield* court's failure to distinguish between intent and motive in strict liability cases is contrary to the Wisconsin court's recognition in *Brown* that a defendant who claims legal justification is not seeking to disprove a "state of mind" or culpable mental state but rather is claiming that the alleged violation should be excused regardless of the culpable mental state.

The *Merrifield* court's failure to recognize this distinction is particularly significant in light of the wording of Alaska's strict liability statute. Alaska Statute 16.-05.722 establishes strict liability for those who violate fisheries statutes and regulations "without any culpable mental state," that is, without the element of intent, knowledge, recklessness, or negligence. The wording of the provision affects only defenses based on lack of culpable mental state. Culpable mental state, however, is not implicated by the "first in time, first in right" defense. There is no question that Clucas acted intentionally by continuing to fish, even though his nets were less than 600 feet from Kroll's nets. It is not Clu-

cas' intent, but his priority in time that establishes his defense.

Professor Paul M. Robinson provides a helpful distinction in his treatise, *Criminal Law Defenses* § 23(a) (1984). Robinson distinguishes between defenses based on the prosecution's inability to establish the elements of an offense and defenses that excuse or justify conduct that would otherwise be criminal. As to the latter category, excuse or justification defenses, Robinson observes:

> [They] are real defenses in the sense that they do more than simply negate an element of an offense. They apply even where all elements of the offense are satisfied. They are distinguishable from general defenses (like self-defense or insanity), however, because they introduce criminalization decisions similar to those used in defining offenses, rather than give effect to general principles of exculpation.

*Id.* at 77.

As Robinson points out, the distinction between these two types of defenses is particularly significant in strict liability cases: "[A] defense that operates independently of its ability to negate a culpability element . . . will provide a defense even if no culpability element is required by the offense definition." *Id.* at 107.

The defense of "first in time, first in right" is unrelated to the state's ability to prove the elements of an offense and is thus a defense involving excuse or justification. For this reason, statutory changes in or outright elimination of culpable mental states for a given offense would have no direct bearing on the defense. Clucas does not dispute that the state proved all elements of his violation: that he operated a set gill net within 600 feet of another set gill net. Nor does he argue that his conduct was unintentional. Rather, he argues that he had a good reason for doing what he did—a reason that the law accepts as a justification for his conduct.

Robinson perceives a single principle behind all defenses involving excuse or justification of conduct that would otherwise be criminal: "[W]hile the actor has apparently

satisfied all elements of the offense charged, he has not in fact caused the harm or evil sought to be prevented by the statute." *Id.* at 77. The harm sought to be prevented by minimum distance regulations such as the one involved here is the depletion of Alaska's fishery resources. This harm is caused not by the first person who begins fishing, but by subsequent arrivals who fish within 600 feet of the person already at the site.

One other potential harm deserves mention. The state has a crucial interest in assuring that its regulations can be effectively enforced. This interest raises legitimate concerns in cases such as Clucas', because, as a realistic matter, an officer arriving at an area where numerous persons are fishing within 600 feet of each other will seldom if ever be capable of distinguishing those who came first from those who subsequently encroached. As a practical matter, enforcement would be virtually impossible if the officer were precluded from taking any action without determining who came to the site first and who encroached later.

This concern, though certainly valid, is fully answered by the manner in which the "first in time, first in right" defense operates. As with other defenses involving excuse or justification,[2] the "first in time, first in right" defense must, in our view, operate as an affirmative defense—a defense that the accused bears the burden of raising and of establishing by a preponderance of the evidence. *See* AS 11.81.-900(b)(1). Thus, officers who encounter two or more persons fishing in violation of minimum distance regulations, but are unable to determine with reasonable certainty who had priority, will be fully justified in taking appropriate action against all potential violators. All persons ordered to move their nets would be obligated to do so, and those cited could escape sanctions only if they managed to make an affirmative showing, to the satisfaction of the court, that they were first in time.

In conclusion, we do not read AS 16.05.-722 to establish absolute liability; the stat-ute simply eliminates culpable mental state as an element of specified fish and game violations. Because the "first in time, first in right" defense does not implicate the culpable mental state involved in a case, prosecution of a fish and game case under the strict liability statute does not preclude this defense from being raised. In the present case, we conclude that the trial court erred in declining to consider whether the defense of "first in time, first in right" was established.

The judgment is REVERSED.

COATS, J., not participating.

---

**2.** *See, e.g.,* AS 11.81.320 (necessity); AS 11.81.-440 (duress); AS 11.81.450 (entrapment).