LUNDSTEN, P.J.[1]
¶ 1 Dustin Yenter appeals a judgment of conviction for operating while under the influence of an intoxicant and operating with a prohibited alcohol concentration, both as a first offense. Yenter contends that he was entitled to raise the defense of coercion pursuant to State v. Brown , 107 Wis. 2d 44, 318 N.W.2d 370 (1982), and that he alleged sufficient facts to present the defense to a jury. I will assume, for purposes of this opinion, that the defense of coercion may be raised as a defense to the citations in this case. However, I agree with the circuit court that, at the time the court ruled on this topic, the facts presented to the court did not support a reasonable finding that a person in Yenter's position would have reasonably believed that violating the law was the only means of preventing bodily harm to himself or to those people with him. Accordingly, I affirm.
Background
¶ 2 Yenter was arrested and received operating while under the influence of an intoxicant and prohibited alcohol concentration citations for an incident on December 12, 2015. Yenter had been driving back to his house from a party with two passengers, Jessica Vandervort and Mike Von Haden, when he was pulled over.
¶ 3 At the final pretrial conference, Yenter argued that he should be allowed to invoke the defense of coercion under WIS. STAT. § 939.46(1). After oral argument on the availability of the coercion defense, the court ordered Yenter to provide an offer of proof. As his offer of proof, Yenter filed three affidavits, including his own.
¶ 4 On the date of the trial, the circuit court ruled that Yenter was, in theory at least, entitled to raise a coercion defense, but that he was not entitled to assert the defense in this particular case because his offer of proof, even if believed, failed to demonstrate that a reasonable person would have believed the only means to escape an imminent threat was to drive continuously 16 miles while intoxicated.
¶ 5 Subsequently, by stipulation of the parties, the matter was tried to the court. Yenter was found guilty of both offenses. Yenter appeals, challenging the circuit court's order barring him from raising the coercion defense.
Discussion
¶ 6 As noted, I will assume for purposes of this opinion only that a person charged with first offense operating while under the influence may raise as a defense the sort of coercion defense described in Brown . In that case, our supreme court recognized "legal justification" as a defense to a speeding charge "if the conduct of a law enforcement officer causes the actor reasonably to believe that violating the law is the only means of preventing bodily harm to the actor or another and causes the actor to violate the law." See Brown , 107 Wis. 2d at 55-56. Here, the persons that Yenter contends threatened him were not state actors, as in Brown , but I will assume the same underlying theory might apply if Yenter reasonably believed that driving while intoxicated was the only means of preventing bodily harm to himself and the people with him.
¶ 7 I agree with the circuit court that Yenter's offer of proof would not support this defense. Viewed most favorably to Yenter, his offer of proof was as follows.
¶ 8 Yenter went to a party at a house in a rural area where Yenter planned to stay the night. A fight broke out at the party, and Yenter found out that one of his companions, Von Haden, was involved in a physical altercation, "got hit in the head with a beer bottle," and was "thrown down a flight of stairs." Yenter, Von Haden, and a third companion, Vandervort, were chased by people from the party as they ran to Yenter's car. There was no time to discuss who would drive. Yenter had the keys and he got in the driver's seat. Once the three were inside the car, 15 to 20 people began smashing the car with rocks and sticks and punching and kicking the car.
¶ 9 Yenter, Von Haden, and Vandervort subjectively feared for their lives, and Yenter believed he had no choice but to drive away. Once on the road, Yenter intended to return to his house, where the three would feel safe. They drove on "main roads."
¶ 10 At "one point," Von Haden saw headlights and told Yenter that "they were coming up fast." Regarding whether he was being followed, Yenter's offer of proof provides no additional information.
¶ 11 The area was "rural," and the "only place that wasn't rural and had public places was the area by Oakdale." Yenter chose to bypass these public places because he "feared that if we were followed, the people following us would go to that area as well if it was public" and the "safest way to avoid imminent danger was to get to [Yenter's] house." Yenter was stopped by law enforcement about a half mile from his house.[2] After the stop, Von Haden was allowed by police to drive Yenter's car.
¶ 12 Without objection, the circuit court took notice of the following facts. The distance between the party and Yenter's house was about 16 miles and there were a number of farmhouses along Yenter's path back home.
¶ 13 I understand the circuit court to have concluded that, even if a fact-finder believed the objective facts asserted in Yenter's offer of proof, and even assuming that a reasonable person in Yenter's position would have initially believed that driving himself was the only way to avoid bodily harm, the offer of proof did not demonstrate that Yenter's only reasonable option continued to be that he must drive all the way to his house. I agree.
¶ 14 In particular, the circuit court opined that Yenter could have stopped at a public place in Oakdale, stopped at a farmhouse and called the police, or Yenter could have stopped his vehicle and let Von Haden drive.
¶ 15 The record easily supports these conclusions. In particular, as the circuit court plainly understood, Yenter's offer of proof did not indicate that Yenter was continuously followed or that he was being followed at all when he bypassed public places. Moreover, Yenter offers no plausible reason for why he would be safer attempting to enter his house than seeking safety in a public place with witnesses. Yenter seemingly assumes, without saying so in his offer of proof, that at his house he could lock out the people who might be following him and that he could not similarly lock out such threatening people at a public place. This is simply not a reasonable view of the situation. Even if we were to assume that Yenter was being closely followed by people who wanted to harm him all of the distance to his house, nothing in Yenter's offer of proof explains what it was about his house that would have allowed him to actually get inside before being accosted, or why the same people who he feared would bust the window of his car to get at him would not similarly bust the window of his house to gain entry.
¶ 16 I do not find Yenter's arguments on this topic persuasive for several reasons. But I will briefly comment on one of those reasons.
¶ 17 Yenter asserts that the "threat of harm can only be determined by the defendant" and that it was "for the jury to determine whether Yenter's belief was reasonable and not for the Trial Court to interject his opinion." Elsewhere, Yenter focuses on his own subjective fear. I agree that the reasonableness of Yenter's belief would have been for a fact-finder, be that a jury or, in the case of a court trial, a judge. But the standard does not look to Yenter's subjective belief and, thus, it is incorrect to say that the "threat of harm can only be determined" by Yenter. And, it is similarly incorrect to say that the circuit court may not "interject his opinion." It was entirely proper for the circuit court to consider, as I do, whether the offer of proof could satisfy a reasonable fact-finder that Yenter's belief that he had no option except to drive all the way to his house was reasonable.
Conclusion
¶ 18 For the reasons stated herein, I affirm the judgment.
By the Court. -Judgment affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2)(c). All references to the Wisconsin Statutes are to the 2015-16 version.

The circuit court also relied on the admission that, while fleeing in Yenter's car, one of Yenter's companions had a cell phone. Because there is some doubt about cell phone coverage in the area and because I need not rely on the option of calling for help using a cell phone in Yenter's car, I do not rely on this alternative justification for denying the request to invoke the coercion defense.